No.  17-934C
Judge Wolski

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

MAIL TRANSPORTATION, INC., *et al.*,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S RESPONSE IN OPPOSITION
TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:                    FRANKLIN E. WHITE, JR.
REDDING C. CATES              Assistant Director
Attorney
United States Postal Service   ADAM E. LYONS
475 L'Enfant Plaza SW          Trial Attorney
Washington, DC 20260-1101      Commercial Litigation Branch
                               Civil Division
                               U.S. Department of Justice
                               P.O. Box 480, Ben Franklin Station
                               Washington, DC  20044
                               Tel:  (202) 353-2345
                               Fax:  (202) 514-7969
                               Email:  Adam.E.Lyons@usdoj.gov

July 17, 2017                  Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OFf AUTHORITIES ................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

    I.    Background Of The Dispute ........................................................................... 1

    II.   Summary Of The Argument ........................................................................... 2

ARGUMENT ...................................................................................................................... 3

    I.    Standard Of Review ....................................................................................... 3

    II.   Plaintiffs Have Not Shown A Substantial Likelihood of Success On The Merits ........... 4

    III.  Plaintiffs Will Not Suffer Irreparable Harm ................................................. 6

        A.   The Harm Plaintiffs Allege Is Not Related To The Allegedly Illegal Action .............. 6

        B.   Any Harm Plaintiffs Allege Is Economic, And Is Reparable In Damages ................... 7

        C.   Plaintiffs' Long Delay Shows A Lack Of Irreparable Harm ........................................ 8

    IV.  The Potential Injury To Plaintiffs Does Not Outweigh The Injury To The Government In Granting The Requested Relief .................................................. 9

    V.   The Public Interest Is Against An Injunction Here ........................................ 10

    VI.  Should The Court Grant An Injunction, A Bond In The Amount Of $10 Million Per Pay Period Is Appropriate ................................................................... 11

CONCLUSION…………………….………………………………………………………11

# <u>TABLE OF AUTHORITIES</u>

*Advanced Data Concepts, Inc. v. United States*,
   216 F.3d 1054 (Fed. Cir. 2000) ........................................................................ 3

*Air Transp. Assoc. v. Export-Inport Bank*,
   840 F. Supp. 2d 327 (D.D.C. 2012) ................................................................ 7

*Axiom Res. Mgmt., Inc. v. United States*,
   564 F.3d 1374 (Fed. Cir. 2009) ....................................................................... 4

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 401 (1971) ........................................................................................ 4

*Cordis Corp. v. Boston Sci. Corp.*,
   99 F. App'x 928 (Fed. Cir. 2004) ................................................................... 9

*Doctor's Assocs., Inc. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997) .......................................................................... 11

*E.W. Bliss Co. v. United States*,
   77 F.3d 445 (Fed. Cir. 1996) ...................................................................... 4, 5

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 386, 392 (2006) ................................................................................7

*Eskridge Research Corp. v. United States*,
   92 Fed. Cl. 88 (2010) ..................................................................................... 9

*FMC Corp. v. United States*,
   3 F.3d 424 (Fed. Cir. 1993) ............................................................................ 3

*Fund for Animals v. Frizzell*,
   530 F.2d 982 (D.C. Cir. 1975) ....................................................................... 8

*Galen Med. Assoc. v. United States*,
   369 F.3d 1324 (Fed. Cir. 2004) ...................................................................... 4

*GEO Grp., Inc. v. United States*,
   100 Fed. Cl. 223 (2011) ................................................................................. 3

iii

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,*
  49 F.3d 1551 (Fed. Cir. 1995) ................................................................. 9

*Honeywell, Inc. v. United States,*
  870 F.2d 644 (Fed. Cir. 1989) ............................................................. 4, 5

*Hospital Klean of Tex., Inc. v. United States,*
  65 Fed. Cl. 618 (2005) ........................................................................... 7

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ............................................................................... 3

*Minor Metals, Inc. v. United States,*
  38 Fed. Cl. 379 (1997) ........................................................................... 7

*Monsanto Co. v. Geerston Seed Farms,*
  561 U.S. 139 (2010) ............................................................................... 8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm,*
  463 U.S. 29 (1983) ............................................................................. 4, 5

*Myers & Myers, Inc. v. Postal Service,*
  527 F.2d 1252 (2d Cir. 1975) ................................................................. 5

*Mylan Pharms. Inc. v. Shalala,*
  81 F.Supp.2d 30 (D.D.C. 2000) ............................................................. 8

*Newdow v. Bush,*
  355 F. Supp. 2d 265 (D.D.C. 2005) ....................................................... 8

*Norton v. S. Utah Wilderness Alliance,*
  542 U.S. 55 (2004) ................................................................................. 4

*OAO Corp. v. United States,*
  49 Fed. Cl. 478 (2001) ........................................................................... 7

*Salsbury Indus. v. United States,*
  905 F.2d 1518 (Fed. Cir. 1990) ............................................................. 5

*Sanofi-Synthelabo v. Apotex, Inc.,*
  470 F.3d 1368 (Fed. Cir. 2006) ........................................................... 11

*Sierra Military Health Serv. v. United States,*
  58 Fed. Cl. 573 (2003) ........................................................................... 7

*Turner Constr. Co., Inc. v. United States*,
  645 F.3d 1377 (Fed. Cir. 2011).................................................................................. 6

**STATUTES**

5 U.S.C. § 706) ............................................................................................................ 4

28 U.S.C. § 1491(b) ..................................................................................................... 4

39 U.S.C. § 5005.......................................................................................................... 2

**RULES**

RCFC 5.4(b)(3) ......................................................................................................... 1, 4

RCFC 65(c) ................................................................................................................ 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | | |
|---|---|---|
| MAIL TRANSPORTATION, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-934C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Wolski) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 7.2(a)(1) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, responds to plaintiffs' application for temporary

restraining order and motion for preliminary injunction.[1]

**INTRODUCTION**

**I.   Background Of The Dispute**

Plaintiffs are private entities who have entered into contracts with the Postal Service to

provide mail transportation services on various routes (Highway Contract Routes (HCRs)).

Compl. for Injunc. Relief, ECF No. 1 (Compl.), at ¶ 11.  Mail transportation service through

HCRs is differentiated from transportation of mail through Government employees (Postal

Vehicle Service (PVS)).  Compl. at 1.  Each contract grants the Government a unilateral right of

---

[1] As part of the support for this response, the Government relies on the arguments it makes in its motion to dismiss.  In accordance with RCFC 5.4(b)(3)(A), a copy of that motion is attached in the appendix to this response.  Appx38 ("Appx" refers to the documents attached in the appendix to this response).  In accordance with RCFC 5.4(b)(3)(B), the Government states that the substantive portion of its motion, Appx44-61 to dismiss is 18 pages long, such that this response is considered to be 30 pages long under RCFC 5.4(b)(3)(C).

termination.  Compl. Ex. 4 at 10; *see also, e.g.*, Mem. in Supp. of Pl.'s App. for TRO & Mot. for Prelim. Injunc., ECF No. 3 (Pl. Mem.) at Exs. 3.1 § 2.3.3a, 7.1 § 2.3.3a, 11.1 § 2.2.3a.

In accordance with an arbitrator's order and an agreement with its union, the Postal Service has announced an intention to terminate plaintiffs' contracts and use PVS to provide mail transportation along the routes plaintiffs currently serve.  Pl. Mem. at Ex. 13.  Plaintiffs have filed a complaint alleging that they may protest the use of PVS on the routes or that the replacement of their contracts with PVS violates the implied covenant of good faith and fair dealing.  Compl. at counts I-II.

Plaintiffs also have filed a motion seeking to enjoin the Postal Service from (1) terminating their "contracts and converting them to PVS without performing the analysis required by 39 U.SC. § 5005" and (2) from "taking any further action in support of this effort, including the recruitment of [p]laintiffs' employees."  Pl. Mem. at 32.  Plaintiffs have not identified any noncompetition agreement or other preclusion on hiring of employees that is part of their contracts.  *See generally* Compl.

## II.   <u>Summary Of The Argument</u>

Plaintiffs are not entitled to injunctive relief because they fail to make out the elements such relief requires.

First, because they do not assert a claim within this Court's jurisdiction and rely on a misreading of statutes and misapplication of contract law, plaintiffs do not have a substantial likelihood of ultimate success on the merits.  Moreover, plaintiffs have advanced nothing to support a finding that they can bear the "heavy burden" necessary to succeed on the merits of a bid protest claim challenging a discretionary balance of factors.

Second, plaintiffs will not suffer irreparable harm in the absence of an injunction.  To the contrary, the harm they allege is unrelated to the alleged wrong.  Moreover, the harm would be

purely economic and is redressable in damages as part of plaintiffs' Contract Disputes Act (CDA) claim. Finally, plaintiffs long delay in seeking an injunction shows that there is no irreparable harm here.

Third and fourth, the potential injury to the Postal Service and the public weigh against injunctive relief. The Postal Service will suffer severe economic harm if it is prevented from complying with its union agreement. Equally, the public interest favors the speedy and accurate distribution of the mail, which will be disrupted if the Postal Service is prevented from using postal vehicle service (PVS) for transportation of the mail.

## ARGUMENT

## I.   Standard Of Review

"In order to obtain a temporary restraining order, a party must show: (i) it will suffer irreparable injury unless the order issues; (ii) the threatened injury to it outweighs any damage to the opposing party; (iii) the temporary restraining order, if issued, will not be adverse to the public interest; and (iv) a substantial likelihood exists that it will prevail on the merits." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 226 (2011) (citations omitted). Such an order "is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A Wright, Miller & Kane, Fed. Prac. & Proc. § 2948, at 129–30 (2d ed. 1995)) (further citations omitted). Failure to meet the criteria of any one factor may require denial of the request for a preliminary injunction. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (emphasis added).

The Court's standard of review in bid protests is "highly deferential," *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), and is limited to determining whether the agency's action is "arbitrary, capricious or otherwise not in accordance

3

with the law." 28 U.S.C. § 1491(b) (incorporating by reference 5 U.S.C. § 706); *Galen Med. Assoc. v. United States*, 369 F.3d 1324, 1329-30 (Fed. Cir. 2004).  An agency's decision will be set aside only if there has been a "clear and prejudicial" violation of law or the agency's decision lacks a rational basis.  *Galen*, 369 F.3d at 1329-31.

Under this standard, the plaintiff bears a "heavy burden."  *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).  In reviewing the agency's procurement decisions, the Court should recognize that the decision is entitled to a "presumption of regularity," and that the reviewing court may not substitute its judgment for that of the agency.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 401, 415 (1971) (citations omitted); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983).  Moreover, so long as there was a reasonable basis for the agency's actions, they will be upheld.  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).

## II.   Plaintiffs Have Not Shown A Substantial Likelihood of Success On The Merits

Plaintiffs are not substantially likely to succeed on the merits.  They cloak an attack on an arbitrator's decision as a bid protest, in an invalid attempt to create jurisdiction over that claim.  Similarly, they assert a CDA claim for which they do not have a contracting officer's final decision.  They also misread the applicable statute to create an obligation not present in the law.  The Government has explained the full bases for these points in its motion to dismiss, filed concurrently with this response and attached pursuant to RCFC 5.4(b)(3)(A).  Appx38.

Moreover, a motion for injunctive relief within the context of insourcing is particularly problematic because it unduly infringes upon the Executive function and gives rise to separation of powers concerns.  The "Supreme Court has warned against undue judicial interference with the lawful discretion given to agencies."  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1384 (Fed. Cir. 2009) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 67

(2004)).  If the Court enjoins insourcing of the services at issue, such that the agency would not be permitted to perform them with its employees, the Court would effectively be stepping into the role of the Executive Branch and dictating what tasks agency supervisors can and cannot direct their employees to perform.  There is nothing inherently unlawful about a Government employee transporting the mail and the Court should not be involved in the minutiae of an agency's day-to-day operations.

Further, the Court must consider plaintiffs' "heavy burden" to overcome the "presumption of regularity," and that they cannot seek to have the Court substitute its judgment for that of the agency.  *E.W. Bliss*, 77 F.3d at 449; *Overton Park*, 401 U.S. at 415; *Motor Vehicle*, 463 U.S. at 43.  A decision of contract award under § 5005 is discretionary with the Postal Service and is based on a number of factors, not merely cost.  *Myers & Myers, Inc. v. Postal Service*, 527 F.2d 1252, 1256 (2d Cir. 1975).  So long as the Postal Service was reasonable in exercising its discretion in evaluating the various factors, its decision would not be disturbed.  *Honeywell*, 870 F.2d at 648.

Assuming plaintiffs can show that there was a procurement at issue (which there was not), and that the Postal Service made a choice to use PVS routes (which it did not), they will not be able to show that the Postal Service abused its discretion in balancing the factors of public interest under § 5005(c).  The Postal Service acts within its discretion in terminating contractor mail service routes in response to an enforceable court's order or even a nonbinding statement.  *Salsbury Indus. v. United States*, 905 F.2d 1518, 1520 (Fed. Cir. 1990).  Plaintiffs have offered nothing to rebut the presumption that the Government acts in good faith and they are not likely to succeed on the merits of showing an abuse of this discretionary decision now.

**III.**     **Plaintiffs Will Not Suffer Irreparable Harm**

The harm plaintiffs allege does not relate to the alleged illegality and is compensable in damages.  In addition, plaintiffs have inexplicably delayed in bringing this matter to the Court.  For any and all of these reasons, plaintiffs do not establish irreparable harm.

**A.**     **The Harm Plaintiffs Allege Is Not Related To The Allegedly Illegal Action**

First, the key harm plaintiffs allege is monetary loss from the termination of the contracts, not from their replacement with PVS.  Mem. at 24 ("Plaintiffs will lose multiple millions of dollars in annual revenue"), ("Plaintiffs will be forced to lay off long-time employees working directly on the HCR contract routes . . . [and will be] left with idled and under-utilized equipment, facilities, and personnel.").  In making that argument, plaintiffs have misidentified the relevant analysis.  To be enjoined, the action complained of must be the wrong at issue in the case.  *Turner Constr. Co., Inc. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011) ("Injunctive relief is appropriate if it 'enjoin[s] the illegal action and return[s] the contract award process to the status quo ante.'") (citation omitted).

Here, plaintiffs do not challenge the Government's right to terminate the contracts.  *See* Compl. at Count II (alleging violation of good faith and fair dealing because of termination of contracts combined with transfer of service from private contract to Government provider).  Plaintiffs assert that the Government is not entitled to replace their services with Government services without considering cost.  *Id.*  Plaintiffs, however, could not be heard to complain if the Government terminated their contracts and replaced them with other private contractors through a bidding process or if the Government terminated them and cancelled the routes entirely or terminated them and showed a cost analysis that proved that PVS is less expensive on these routes.  In short, to succeed in this element, plaintiffs must show irreparable harm from the fact

6

of being replaced with Government services, as opposed to harm from merely being terminated. That they do not do.[2]

### B.  Any Harm Plaintiffs Allege Is Economic, And Is Reparable In Damages

Plaintiffs allege irreparable harm in the form of lost profits.  Mem. at 24-30.  That is economic harm.  *See Air Transp. Assoc. v. Export-Inport Bank*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) ("The loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms.").  Economic harm alone, however, is not typically sufficient to establish irreparable injury.  *See Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381-82 (1997) ("economic harm, without more, does not seem to rise to the level of irreparable injury.") (citation omitted).  This Court has applied this principle in the bid protest context.  *See, e.g., Sierra Military Health Serv. v. United States*, 58 Fed. Cl. 573, 582 (2003) ("these potential losses are primarily monetary.  While these losses may be substantial, they are not irreparable.") (quoting *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001)); *Minor Metals*, 38 Fed. Cl. at 381-82 (1997) (economic harm, of itself, is not irreparable).

In those bid protests where this Court has departed from this well-established principle it has been because disappointed bidders are limited to recovering bid preparation and proposal costs and do not have adequate remedies at law.  *See, e.g., Hospital Klean of Tex., Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005).  Here, plaintiffs have contracts, entitling them to seek contract damages under the CDA, such that this concern is not present.  *See also generally eBay, Inc. v. MercExchange, LLC*, 547 U.S. 386, 392-93 (2006) (in deciding whether to award

---

[2]  Plaintiffs also complain that they suffer irreparable harm because USPS is recruiting their employees.  Pl. Mem. at 24.  They do not contend there is any non-competition agreement or other requirement that precludes that action.  *See* Compl.  Again, they assert irreparable harm based on an action that is unrelated to the allegedly illegal act.

permanent injunctive relief, courts must apply the traditional four-factor test applied by courts of equity); *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 142 (2010) ("drastic and extraordinary remedy" of injunctive relief should not be "granted as a matter of course.").

The harm that plaintiffs contemplate is lost profits.  They may seek compensation under the CDA and there is no irreparable injury here.

C.     **Plaintiffs' Long Delay Shows A Lack Of Irreparable Harm**

Plaintiffs, through their industry association, sought an injunction from the United States District Court for the District of Columbia (district court) to prevent USPS "from taking any action to implement the portion of the August 18, 2016 arbitration award that directs [USPS] to terminate up to 110 highway mail transportation routes currently served by contractors so that the routes may be served by Postal Service employees."  Appx1.  As we pointed out in response to that motion, "[t]he Association first learned of the arbitration award sometime in September 2016.  (Maraney Decl. ¶ 13).  Affording the Association the most generous timeline under that set of facts, Mr. Maraney may have become aware of the arbitration award as late as September 30, in which case the Association waited 63 days before it filed its December 2 motion for injunctive relief."  Appx21.  We further pointed up that "[c]ourts have found inexcusable delay where a movant waits less time before seeking injunctive relief" and directed plaintiffs' attention to *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("Unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding delay of 44 days "inexcusable"); *Mylan Pharms.*, 81 F.Supp.2d 30, 44 (D.D.C. 2000) (delay of two months "militates against a finding of irreparable harm").  *Id.*  The district court dismissed the case before it on December 19, 2016.  Appx28.

Plaintiffs have now waited an additional almost eight full months before seeking injunctive relief.  That delay shows that they do not in fact face irreparable harm.  *Cordis Corp. v. Boston Sci. Corp.*, 99 F. App'x 928, 934 (Fed. Cir. 2004) (unpublished) ("Delay is a factor in evaluating irreparable harm.") (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88, 99 (2010) ("The court also notes that the plaintiff's delay in seeking injunctive relief is one of the equities that weighs strongly against ERC's claim of irreparable harm.  ERC has known of Bowhead's award for over five months and waited two months after learning that USACE was taking corrective action before filing this case.  The plaintiff's failure to immediately challenge USACE's decision to allow Bowhead to continue with the awarded contract strongly evidences that ERC did not fear immediate harm.").

## IV. The Potential Injury To Plaintiffs Does Not Outweigh The Injury To The Government In Granting The Requested Relief

The Government must comply with the underlying arbitration award by virtue of its collective bargaining agreement ("CBA") with its union.  Appx31 at ¶ 6.  The union has already informed the Government that it will seek damages in the amount of $10 million per pay period if there is a failure to transfer the routes to PVS.  Appx32 at ¶ 11.  In addition, failure to comply will harm the Postal Service's relationship with its union.  *Id.* at ¶ 13.  Thus, potential harm to the Government is at least $10 million dollars if an injunction is in place at all, and increases by that amount again every two weeks thereafter.  *Id.*

By comparison, the harm to plaintiffs if there is no injunction is minimal because plaintiffs do not have a right to prevent the termination of their contracts in any event.  All of the contracts grant USPS the unilateral right to terminate.  Compl. Ex. 4 at 10; *see also, e.g.*, Pl. Mem. at Ex. 3.1 § 2.3.3a, 7.1 § 2.3.3a, 11.1 § 2.2.3a.  The damages plaintiffs assert from loss of

business will occur regardless of whether, after termination, the contracts go to PVS or to plaintiffs' competitors. Plaintiffs have not identified a harm from the transfer to PVS (as opposed to a competitor) and, in any event, such a harm would be minimal. On balance, the harm to the Government in enjoining this action is far greater than the harm from denying plaintiffs' request.

## V.      The Public Interest Is Against An Injunction Here

Because USPS has the right to terminate the contracts (and will do so), an injunction against using PVS to transport mail over the relevant routes will result in service disruptions throughout the United States. Appx36-37 at ¶ 19. The public has an interest in the speedy transportation of its mails. Interruption of service will cause harm to the public through delay in provision of social security and disability payments, service of legal documents, transmission of payments and billings, and in other, innumerable ways.

Plaintiffs miss the mark with their argument that, if an injunction is granted, they will continue to provide HCR service, such that the status quo will continue. Pl. Mem. at 30. To the contrary, Plaintiffs have asserted no basis on which this Court can or should enjoin the terminations, which are within the Government's unilateral powers under the contracts. Instead, the analysis of the public interest here can only be accurate if it is based on an injunction that prevents USPS from turning over the routes to PVS.

In addition, Plaintiffs' argument that the public interest favors an injunction to enforce § 5005 is based on their flawed reading of the statute. Because the Postal Service has discretion in weighing the various factors that are part of the public interest analysis under this section, the argument is not applicable.

10

**VI.     Should The Court Grant An Injunction, The Bond Should Be Set In Light Of The Potential Damages Of $10 Million Per Pay Period Is Appropriate**

Should the Court grant preliminary injunctive relief, an appropriate bond must be set. "'No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.' The amount of a bond is a determination that rests within the sound discretion of a trial court." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1384–85 (Fed. Cir. 2006) (quoting Fed. R. Civ. P. 65(c); citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *see also* RCFC 65(c) (same). Here, the APWU has already stated that it will seek a damages in the amount of $10 million per pay period if the routes are not converted to PSV by September 1. Appx32 at ¶ 13. Accordingly, should the Court order a preliminary injunction, the bond should be set in light of the potential $10 million in damages for each two week period that the injunction is anticipated to last.

## CONCLUSION

For all of these reasons, the United States respectfully requests that the Court deny plaintiffs' request for injunctive relief.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

| | |
|---|---|
| OF COUNSEL: | s/ Franklin E. White |
| REDDING C. CATES | FRANKLIN E. WHITE, JR. |
| Attorney | Assistant Director |
| United States Postal Service | |
| 475 L'Enfant Plaza SW | s/ Adam E. Lyons |
| Washington, DC 20260-1101 | ADAM E. LYONS |
| | Trial Attorney |
| | Commercial Litigation Branch |
| | Civil Division |
| | U.S. Department of Justice |
| | P.O. Box 480, Ben Franklin Station |
| | Washington, DC  20044 |
| | Tel:  (202) 353-2345 |
| | Fax:  (202) 514-7969 |
| | Email:  Adam.E.Lyons@usdoj.gov |
| July 17, 2017 | Attorneys for Defendant |