# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL STAR ROUTE MAIL CONTRACTORS ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-02350-CKK |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendant. | ) ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff National Star Route Mail Contractors Association, Inc. ("Star Route Association" or "Association") moves for a temporary restraining order and preliminary injunction forbidding Defendant United States Postal Service ("the Postal Service") from taking any action to implement the portion of the August 18, 2016 arbitration award that directs the Postal Service to terminate up to 110 highway mail transportation routes currently served by contractors so that the routes may be served by Postal Service employees.

The Star Route Association represents the interests of individuals and small businesses who hold mail transportation contracts with the Postal Service known as Highway Contract Routes ("HCR") contracts. The arbitration award directs the Postal Service to terminate up to 110 HCR contracts so that the routes currently operated by HCR contractors can be converted to Postal Vehicle Service ("PVS"). Terminating these HCR contracts would mean the loss of more than $57 million in annual revenue to these HCR contractors. In addition to lost revenues and

profits, the terminated contractors would be forced to lay-off employees, be left with idled and under-utilized equipment and facilities, and face other irreparable harms.

The legal basis for the injunction is two-fold. First, terminating these HCR contracts and converting them to PVS exceeds the authority granted to the Postal Service in the Postal Reorganization Act. Under 39 U.S.C. § 5005(c), the Postal Service must choose the mode of surface transportation that "best serves the public interest, giving due consideration to the cost of the transportation service under each mode." The Postal Service did not make a new § 5005(c) determination and instead is changing transportation modes to comply with an arbitration decision. Had the Postal Service made the required determination, the routes would have remained with the existing HCR contractors because using PVS is far more expensive and would not serve the public interest.

Second, the Postal Service's implementation of the arbitration award violates the impacted HCR contractors' due process rights. The arbitration arose from a labor dispute between the Postal Service and the American Postal Workers Union ("APWU"). The HCR contractors were not notified of the proceeding nor given an opportunity to present evidence or argument, even though the proceeding resulted in the deprivation of their economic interest in their existing contracts.

The HCR contractors impacted by the Postal Service's plan to implement the arbitration award and terminate their contracts are entitled to immediate injunctive relief. They are likely to succeed on the merits. They will suffer irreparable harm without an injunction. An injunction will cause no harm to the Postal Service or to any employees of the Postal Service. The public's interest in enforcement of federal law and limiting the ultra vires acts of federal agencies also

favors injunctive relief.  In support of this motion, the Association relies on the Complaint, the

memorandum of law submitted with this motion, the declarations and other supporting exhibits.

**DATED** this ___2nd___ day of December 2016.

Respectfully submitted,


_____/s/  David P. Hendel_____
David P. Hendel  (D.C. Bar No. 370705)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC  20006-4675
Direct line: (202) 378-2356
Fax: (202) 378-2319
david.hendel@huschblackwell.com


_____/s/  Brian P. Waagner_____
Brian P. Waagner  (D.C. Bar No. 450823)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC  20006-4675
Direct line: (202) 378-2355
Fax: (202) 378-2319
brian.waagner@huschblackwell.com

*Counsel for National Star Route Mail Contractors
Association, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL STAR ROUTE MAIL CONTRACTORS ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 1:16-cv-02350-CKK |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant United States Postal Service ("Postal Service"), by and through undersigned counsel, respectfully submits the following opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") and moves to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  December 8, 2016

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C Bar #415793

DANIEL VAN HORN
Chief, Civil Division
D.C. Bar # 924092

By:    */s/ Jason T. Cohen*
JASON T. COHEN
ME Bar #004465
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2523
Fax: (202) 252-2599
Email: jason.cohen@usdoj.gov

OF COUNSEL:

ERIN E. LYNCH
Attorney
Employment and Labor Law Section
United States Postal Service

2

**Appx5**

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………...………………1

FACTUAL BACKGROUND………………………………………………………......1

PROCEDURAL BACKGROUND……………………………………...………...3

STANDARDS OF REVIEW………………………………………...……………………4

ARGUMENT…………………………………………………………...……………………6

      I.      The Court Lacks Jurisdiction Because the Claims are not Ripe, and Regardless, Jurisdiction Lies with the Court of Federal Claims…………….......................................................................6

      II.     The Association Fails to State a Claim for which Relief Can Be Granted…………………………………………………...8

      III.    The Association Has Not Shown Entitlement to Injunctive Relief…………………………………………………………...9

      IV.    Supplemental Issues…………………………...……………………18

CONCLUSION…………………………………………………………………...…20

EXHIBIT LIST......................................................................................................21

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## INTRODUCTION

The National Star Route Mail Contractor's Association, Inc. ("Plaintiff" or "Association") seeks the extraordinary remedy of a temporary restraining order and preliminary injunction to prevent the Postal Service from complying with an arbitration award. The award requires the Postal Service to convert certain highway transportation routes currently held by the Association's members to union-run routes, however, no routes have yet been terminated. The Association urges this Court to grant its Motion without establishing this Court's jurisdiction or the Association's members' entitlement to relief. Such extraordinary relief is unwarranted here, first, because this Court lacks jurisdiction. The Association's members have suffered no harm, but even if they did, their recourse would be before the Court of Federal Claims, not this Court. Further, this Court also lacks jurisdiction because no private right of action has been created under the legal provision cited by Plaintiffs, 39 U.S.C. § 5005(c). Finally, the due process clause of the Constitution provides no avenue for relief given the nature of the contracts at issue. Therefore, this is not a case that allows the Court to award the equitable remedy Plaintiff demands, and dismissal is appropriate.

## FACTUAL BACKGROUND

The Underlying Arbitration Award

On August 18, 2016, the Postal Service received the award for its November 2015 arbitration with the American Postal Workers Union, AFL-CIO ("APWU"), one of its major unions. Ex. 1-A. In the arbitration proceedings, the APWU argued that the Postal Service violated its collective bargaining agreement with the union by awarding certain Highway Contract Route ("HCR") contracts without first complying with its notice obligations to the APWU. *Id.* at 6. The

arbitrator sided with the APWU and found that the Postal Service had not provided adequate notice under the collective bargaining agreement. *Id.* at 16-17. As a result, the arbitrator ordered that the Postal Service convert some 110 HCR contracts to the Postal Vehicle Service ("PVS"), which is a bargaining unit represented by the APWU. *Id.* at 19, 20.

The Ongoing HCR Route Conversion

The arbitration award imposes a 6-month deadline for complying with its remedy provisions, unless the parties agree otherwise. *Id.* The award anticipates conversion of 110 HCR routes to PVS while acknowledging that the number of routes eventually converted is subject to negotiation by the Postal Service and the APWU. *Id.* ("[T]he Postal Service shall convert the 110 (or whatever number there continue to be . . . ."). The award additionally provides that "by agreement, the parties may substitute other route(s) to be converted to PVS service pursuant to this order based on particular circumstances." *Id*. The Postal Service remains in negotiations with the APWU to determine (a) the number of routes that will ultimately be converted, and (b) which routes are most appropriate for conversion, and alternatively, which should remain as HCR routes. Ex. 1 ¶¶ 10-11.

In its ongoing effort to comply with the arbitration award, on October 18, 2016 the Postal Service sent the Association a provisional list of 102 HCR routes that it intends to convert to PVS service. *Id.* at ¶ 11. This list was not final and was subject to further negotiations with the APWU. *Id*. Indeed, the status of approximately half of those routes remains unresolved for various reasons. *Id*. The Postal Service is scheduled to meet with the APWU on December 8, 2016 in its ongoing effort to identify routes for conversion. *Id.* at ¶ 10. While it is working diligently with the APWU to identify the appropriate routes, it is likely that the Postal Service will be unable to exercise many (if not all) of the termination notices by the Association's projected date of December 19, 2016

(60 days before the 6-month deadline imposed in the arbitration award). *Id.* at ¶ 13.  This moving timeline is anticipated by the arbitration award, which provides that the remedy is to be implemented "[w]ithin six months of the date of th[e] Award (unless otherwise agreed) . . . ." Ex. 1-A at 19.

The Anticipated Termination of the HCR Routes

All of the 102 contracts identified in the Postal Service's provisional list to the Association contain termination clauses. *See* Ex. 2 ¶¶ 6, 8. Most of the termination clauses provide, in sum and substance, that either party may terminate the contract through written notice in a specified time period with no cost to either party. *Id.* at ¶ 6; *see also, e.g.,* Ex. 2-I at 12-13; Ex. 2-J at 30. If an HCR contract does not include a Termination with Notice clause, it instead includes a Termination for Convenience clause that does not require a notice period before the contract may be terminated. Ex. 2 ¶ 8, 9; *see also*, *e.g.,* Ex. 2-I at 13. HCR contracts do not require cause for termination. Ex. 2 ¶ 10. There are no indemnity clauses providing for payment to the Association in the event the Postal Service exercises the termination clauses in any of these 102 contracts. Ex. 2 ¶ 11. The Postal Service has not reached agreement with the APWU on the 110 HCR routes to be converted and, as a result, has not exercised the termination clauses in any of the HCR routes anticipated for conversion. Ex. 1 ¶¶ 10-11; Ex. 2 ¶ 13. Once the Postal Service and the APWU have reached agreement on identification of routes and the number of routes to be converted, the Postal Service will begin the process of terminating the HCR contracts pursuant to the termination clauses. *See* Ex. 1 ¶ 12; Ex. 2 ¶ 14.

## PROCEDURAL BACKGROUND

On November 30, 2016, the Association filed its Complaint alleging (1) violation of 39 U.S.C. § 5005(c), and (2) violation of Fifth Amendment due process. (ECF No. 1). The Association

filed a corrected complaint on December 2, 2016. (ECF No. 4). Later that day, the Association filed its motion for temporary restraining order and preliminary injunction, along with a request for an expedited hearing. (ECF No. 6).

**STANDARDS OF REVIEW**

I.     **Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction**

Pursuant to Rule 12(b)(1), a court must dismiss a claim when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011). When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiff's favor." *Id.* At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). "[T]he District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone." *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992). The Court also, however,

Appx10

may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. *Id.*

## II.     Dismissal Pursuant to 12(b)(6) for Failure to State a Claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court should dismiss a claim if the plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007).

Further, when evaluating a motion to dismiss under Rule 12(b)(6), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## III.    Standard of Review for Temporary Restraining Order / Preliminary Injunction

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits, (2) that it will suffer irreparable injury if the

injunction is not granted, (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C. Cir. 1995)). "These factors interrelate on a sliding scale and must be balanced against each other." *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999) (citing *Serono Labs. v. Shalala*, 158 F. 3d 1313, 1318 (D.C. Cir. 1998)). "If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate." *Todd v. Fleming*, 223 F. Supp. 2d 15, 20 (D.D.C. 2002). "It is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits." *Barton v. District of Columbia,* 131 F.Supp.2d 236, 242 (D.D.C. 2001). Success on the merits must be established by a clear showing, with the movant carrying the burden of persuasion. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). If the movant cannot demonstrate substantial likelihood of success on the merits, injunctive relief must be denied on that ground alone, without inquiry into the other factors. *McGinn, Smith & Co., Inc. v. Fin. Indus. Regulatory Auth.*, 786 F. Supp. 2d 139, 144-45 (D.D.C. 2011) (collecting cases).

## ARGUMENT

### I. The Court Lacks Jurisdiction because the Claims are not Ripe, and Regardless, Jurisdiction Lies with the Court of Federal Claims

The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations. *See, e.g., Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 74 (1996). "'Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.'" *I.N.S. v. Pangilinan,* 486 U.S. 875, 883 (1988) (quoting *Hedges v. Dixon County,* 150 U.S. 182, 192 (1893)). Thus, a court "cannot, by avowing that there

is a right but no remedy known to the law, create a remedy in violation of law." *Pangilinan*, 486 U.S. at 883 (quoting *Rees v. Watertown*, 86 U.S. [19 Wall.] 107, 122 (1874)).

In this case, the Court lacks jurisdiction over the Association's claims first and foremost because the claims are not ripe. The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'" *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49 (1967); *accord*, *Ohio Forestry Assn., Inc. v. Sierra Club,* 523 U.S. 726, 732-33 (1998). "Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012).

Here, the Postal Service remains in ongoing negotiations to determine (a) the number of routes that will ultimately be converted, and (b) which routes are most appropriate for conversion. Ex. 1 ¶¶ 10-11. Thus, it is not even clear which of the Association's members, if any, will ultimately be affected by the remedy outlined in the arbitration award.

Where, as here, facts remain uncertain and claims are predicated on future events which may not occur, ripeness cannot be found. *In re Aiken County*, 645 F.3d 428, 434 (D.C. Cir. 2011) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994) (dismissing claim as premature because no legal consequences presently attach).

Even if the claims were ripe, claims for damages arising from an express or implied contract for procurement services with an executive agency are governed by the Contract

7

**Appx13**

Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-7109; *see specifically* 41 U.S.C. § 7102(a)(2). The CDA applies to the Postal Service. *See Anselma Crossing, L.P. v. U.S. Postal Serv.*, 637 F.3d 238, 242-44 (3rd Cir. 2011) (noting that the CDA, post-2006 amendments, continues to apply to the Postal Service); *see also* 39 C.F.R. § 601.109 (containing Postal Service regulations implementing the CDA); *Hayes v. U.S. Postal Serv.*, 859 F.2d 354, 356 (5th Cir. 1988) ("The CDA specifically provides that the USPS is an executive agency within the scope of the statute.").

The CDA is a "comprehensive statutory scheme" intended "to streamline the settlement of controversies over federal government contracts" and "to collect [them] in a forum . . . with both the requisite expertise and the ability to provide consistency in applying the law [of] government contracts." *United States v. Renda Marine Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quotations and citations omitted). Jurisdiction under the CDA under 28 U.S.C. § 1346(a)(2) precludes the district court's jurisdiction under 39 U.S.C. § 409(a). *Anselma Crossing*, 638 F.3d at 238.

The United States Court of Federal Claims has exclusive jurisdiction for claims under the CDA. 28 U.S.C. § 1346(a)(2). Moreover, under the CDA, the Association must first submit its claims in writing to the Contracting Officer for a final decision, before filing with the Court of Federal Claims – an administrative requirement it cannot satisfy because the Postal Service has yet to exercise the termination clauses. 41 U.S.C. §7103(a); *see also Diversified Maint. Sys., Inc. v. United States*, 103 Fed. Cl. 431, 438 (2012); Ex. 2-I at 14; Ex. 2-J at 16-17.

## II.     The Association Fails to State a Claim for which Relief Can Be Granted

The Association's complaint should be dismissed for failure to state a claim upon which relief can be granted on the bases outlined below in Section III(A) addressing the Association's

8

likelihood of success on the merits of its claims under Section 5005(c) and Fifth Amendment due process.

### III.     The Association Has Not Shown Entitlement to Injunctive Relief

#### A.  The Association Has No Likelihood of Success on the Merits

In order to demonstrate that it will succeed on the merits, the Association must, by a clear showing, establish that it will prevail on at least one of its two counts: (1) violation of 39 U.S.C. § 5005(c) concerning the subcontracting of mail transportation, and (2) violation of its members' Fifth Amendment due process rights.

The Association cannot make either of these showings because there is no private right of action under Section 5005(c) and the Association's members have no due process property right in their contracts with the Postal Service.

##### 1.   There is no private right of action under 39 U.S.C. § 5005(c)

"As an entity of the United States government, the [Postal Service] may not be sued except to the extent that Congress has expressly waived the United States's sovereign immunity from suit." *Lane v. Peña*, 518 U.S. 187, 192 (1996). The Postal Reorganization Act, 39 U.S.C. § 101 *et seq.*, generally "waives immunity of the Postal Service from suit giving it the power 'to sue and be sued in its official name.'" *Postal Service v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004). "While Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status. The distinction is important. An absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity." *Id.* at 743-44. This two-step analysis of (1) determining whether immunity from suit has been waived, and (2) determining whether the substantive law at issue provides an avenue of relief was first articulated by the Supreme Court in *FDIC v. Meyer*, 510 U.S. 471, 484 (1994). Thus, even if the

Court finds a waiver of sovereign immunity, it must determine whether the substantive provisions of Section 5005(c) provide an avenue for relief against the federal government. *Id.*

Section 5005(c) provides:

> The Postal Service, in determining whether to obtain transportation of mail by contract under subsection (a)(3) of this section or by Government motor vehicle, shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode.

There is nothing to suggest from the plain language of the statute that Section 5005(c) grants the Association an avenue of relief against the Postal Service. There is nothing in the statute to establish that the Postal Service had any intent to afford the relief requested by the Association here and we are unaware of any precedent for affording a party relief under Section 5005(c).[1]

The Supreme Court has explained that "[p]rivate rights of action to enforce federal law must be created by Congress," *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) (citation omitted), and "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979) (internal quotation marks and citation omitted). Thus, before the Court can reach the merits of its Section 5005(c) claim, the Association bears the burden of

---

[1] The Association includes, as Attachment A to its Motion, an order from a district court in the Northern District of California dated December 4, 1975 captioned case number C-75-1894-SW, *National Star Route Mail Carriers Association, etc., et al. v. United States Postal Service.* The Order appears to act as a settlement of certain claims raised by the Association and includes a reference to Section 5005(c). On December 6, 2016, the Association provided the Postal Service with various other documents related to the case. Those documents were supplemented to this Court on December 7, 2016 (ECF No. 10). The Association did not include the complaint in the 1975 case as part of its supplemental materials. Nothing in the December 4, 1975 Order or the supplemental docket establishes that the Northern District of California court recognized a private right of action under Section 5005(c). Indeed, there was no ruling on the merits in that case. Moreover, even if the court had recognized a private right of action, that decision is not binding here.

**Appx16**

establishing that there is a private right of action under the statute. *Suter v. Artist M.*, 503 U.S. 347, 363-64 (1992).

As a general matter, in assessing whether a private right of action exists, courts first look to the language of the statute itself. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979) ("When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights."). If there is no explicit language in the statute conferring a private right of action, courts look to statutory intent to determine whether there is an intent to create not just a private *right* but also a private *remedy*. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979). "Without [statutory intent to establish a private remedy], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87 (2001) (collecting cases).

Here, the Association has not claimed, nor can it, that the explicit language of Section 5005(c) authorizes private citizens to file suits to enforce it. Indeed, no court has held that such private right of action exists in Section 5005(c). Moreover, the Association offers nothing to demonstrate Congressional intent to create a private right of action under Section 5005(c).

       2.   The Association's members have no Fifth Amendment property rights in the HCR contracts with the Postal Service

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). It follows, then, that before the Association can establish a due process violation, a court must determine "(1) whether [its members] possessed a protected property interest such that due process protections

adhere; and (2) whether [its members] w[ere] afforded an appropriate level of process." *Heasley v. D.C. Gen. Hosp.*, 180 F. Supp. 2d 158, 172 (D.D.C. 2002).

"In order to establish that one has a property interest in a contract, a plaintiff must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Such a claim of entitlement depends upon rules or *mutually explicit understandings* that support [a contractor's] claim of entitlement to the benefit." *Ervin & Assocs., Inc. v. Dunlap*, 33 F. Supp. 2d 1, 9 (D.D.C. 1997) (internal quotation marks omitted) (emphasis added).

Postal Service HCR contracts contain termination clauses that provide either for termination with notice or termination for convenience. Ex. 2 ¶¶ 6, 8. Termination with notice clauses provide in sum and substance that either the Postal Service or the contractor, on written notice, may terminate the HCR contract, in whole or in part, without cost to either party. *Id.* ¶¶ 6-7. Either party can avail itself of the termination provision at will (and without explanation) upon issuance of the appropriate written notice. If a contract does not include a termination with notice clause, it includes a termination for convenience clause instead. *Id.* ¶ 8. A termination for convenience clause allows the Postal Service to terminate a contract immediately with no prior notice to the supplier. *Id.* ¶ 9. HCR contracts do not require termination for cause. *Id.* ¶ 10.

Such at-will relationships do not give rise to a protectable due process interest. *See, e.g.*, *Bishop v. Wood*, 426 U.S. 341, 347 (1976) (rejecting police officer's argument that he had a protectable property interest in his job where his employment was terminable at will); *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) (holding that government employees who are terminable at will have no property interest); *Rainbow Val. Citrus Corp. v. Fed. Crop Ins. Corp.*, 506 F.2d 467, 469-70 (9th Cir. 1974) (finding that plaintiff could not establish a property interest in a contract where either party could cancel the contract by prior written notice); *RWM Consultants, Inc. v.*

**Appx18**

*Centro de Gestion Unica del Suroeste*, 491 F. Supp. 2d 245, 251 (D.P.R. 2007) (same); *Kuster v. Veneman*, 226 F. Supp. 2d 1190, 1197 (D.N.D. 2002) (same).

"The reason for this general consensus is obvious: to allow a procedural due process claim for an 'at will' termination clause would render such a provision useless and completely eviscerate the meaning and purpose of an 'at will' clause; every 'at will' termination clause, would, in effect, be transformed into a 'for cause' provision." *Kuster*, 226 F. Supp. 2d at 1197-98. Accordingly, the Association has failed to state a claim upon which relief can be granted and its due process claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Further, such claims should be dismissed with prejudice because they are premised upon contracts that legally do not implicate a protected property interest, and thus the Association cannot cure the infirmity of its pleadings by amending its complaint.

Even if the Association could establish a property claim in its members' contracts with the Postal Service, it has not outlined what level of process its members are owed in the termination of the contracts. It has proffered no statute that establishes that its members must have notice or opportunity to be heard in the termination of its contracts. Moreover, as explained in Section I, *supra*, Congress has already provided the Association and its members an exclusive avenue to review claims over the termination of their contracts before the Court of Federal Claims. Finally, while the Association asserts that it should have been afforded an opportunity to be heard at the arbitration (Mot. at 11), it has pointed to no legal authority which establishes this right.

**B. The Association Fails to Establish That It Will Suffer Irreparable Injury in the Absence of Injunctive Relief**

1. The harms alleged by the Association are economic in nature and therefore more appropriately redressed before the Court of Federal Claims

If a party cannot establish irreparable injury, injunctive relief may be denied without consideration of the other factors. *Dodd v. Fleming,* 223 F.Supp.2d 15, 20 (D.D.C. 2002). It is

13

**Appx19**

settled that economic loss, by itself, does not constitute irreparable harm. *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough."). This is because economic loss evinces "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation . . . ." *St. Croix Chippewa Indians of Wisconsin v. Kempthorne*, 535 F. Supp. 2d 33 (D.D.C. 2008) (quoting *Found. Health Fed. Servs. v. United States*, No. 93-1717 (NHJ), 1993 WL 738426, at \*2 (D.D.C. 1993)) (quotations and citations omitted).

Here, through Declarations of its members, the Association represents, *inter alia*, that the annual value of the contracts held by its members exceeds $26 million[2] (Maraney Decl. ¶ 16) and that as a result of the loss of the HCR contracts, its members will be forced to lay-off drivers (McAbee Decl. ¶ 32; Messner Decl. ¶ 28; Montgomery Decl. ¶ 13; Dorris Decl. ¶ 12, 15, 18, 19). These are exactly the sort of economic injuries that courts identify as insufficient to constitute irreparable harm. *See e.g.*, *Nat'l Ass'n of Mortgage Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 182 (D.D.C. 2011) (regulation that "will cause many mortgage brokers to lose their jobs or close their business" identified as "purely economic injury"); *St. Croix Chippewa Indians of Wisconsin v. Kempthorne*, 535 F. Supp. 2d 33, 37 (D.D.C. 2008) (loss of revenue anticipated by denial of casino application identified as "purely economic" in nature); *Berman v. DePetrillo*, No. 97–70, 1997 WL 148638, at \*2 (D.D.C. Mar. 20, 1997) ("loss of market" and "loss of business opportunity" identified as "purely economic injury"); *Clipper Cruise Line, Inc. v. U.S.*, 855 F. Supp. 1, 4 (D.D.C. 1994) (identifying loss of "profits" and "goodwill" as

---

[2] The Declaration also notes that "the total annual value of all 102 contracts exceeds $57 million" (Maraney Decl. ¶ 16), but 75 of these contracts are not held by the Association's members and are thus not at issue in this case.

economic loss). When the contracts at issue are terminated, the Association's members may seek redress before the Court of Federal Claims, through the process provided there.

> 2. The Association's delay in seeking injunctive relief weighs against a finding of irreparable harm

The Association first learned of the arbitration award sometime in September 2016. (Maraney Decl. ¶ 13). Affording the Association the most generous timeline under that set of facts, Mr. Maraney may have become aware of the arbitration award as late as September 30, in which case the Association waited 63 days before it filed its December 2 motion for injunctive relief. Courts have found inexcusable delay where a movant waits less time before seeking injunctive relief. *See, e.g., Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("Unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding delay of 44 days "inexcusable"); *Mylan Pharms.*, 81 F.Supp.2d at 44 (delay of two months "militates against a finding of irreparable harm"). The Association's attempts to persuade the Postal Service to vacate the award during that period do not affect a finding of inexcusable delay. *See Spiraledge, Inc. v. Sea World Entm't, Inc.*, No. 13cv296, 2013 WL 3467435, at *5 (S.D. Cal. July 9, 2013) (denying injunctive relief and finding delay in seeking such relief inexcusable despite ongoing settlement negotiations) (cited favorably in *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90–91 (D.D.C. 2014)).

## C. The Balance of Harms and the Public Interest Weigh Against Preliminary Relief

> 1. The Postal Service will be harmed if the Court grants Plaintiff's requested relief

The Association claims that the Postal Service will not be harmed by the injunctive relief it requests. Mot. at 16. This conclusion is erroneous and contradicted by the Association's own

suggestion that the arbitrator retain jurisdiction over the arbitration award "so the APWU may obtain a new remedy that does not violate the law." *Id.* at 17.

The Postal Service must comply with the underlying arbitration award by virtue of its collective bargaining agreement ("CBA") with the APWU. Specifically, the CBA with the APWU provides "[a]ll decisions of an arbitrator will be final and binding." Ex. 1-B. Moreover, as noted by the Association, the Postal Service declined to file a motion to vacate the arbitration award within the three-month statute of limitations outlined in the Federal Arbitration Act (there being no legal basis for doing so), and cannot move to vacate the award at this late stage. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 642 F.3d 1344, 1354 (11th Cir. 2011) (three-month statute of limitations for filing motion to vacate labor arbitrations). Thus, should the Court grant the relief requested here, the Postal Service will be in the untenable position of either ignoring a valid arbitration award or ignoring a court-ordered injunction. It will, of course, be impossible to comply with both absent a finding of some alternative relief by the arbitrator (which is the outcome suggested by the Association). Mot. at 17. And if the arbitrator fashions a new award, the Postal Service will undoubtedly be required to pay some undetermined damages to the APWU, as it will be unable to provide the current remedy of converting the HCR routes held by the Association's members. While we cannot predict what figure the arbitrator will settle upon as an alternative to converting the routes, we can say with a degree of certainty that it will be substantial. As noted by the Association, the damages sought by the APWU in the underlying arbitration exceeded $336 million and included additional monetary damages of $10 million per each future pay period in which the HCR contracts continued. Mot. at 5.

2. <u>Public interest favors denying the relief requested</u>

16

The Association asserts that the public's interest will be harmed in the absence of relief because (1) the public has an interest in the enforcement of Section 5005(c); and (2) the public has an interest in enforcing the Fifth Amendment due process clause. Mot. at 17.

As argued above, the Association's members have no property interest in their contracts with the Postal Service due to the presence of mutual termination clauses. Thus, the Fifth Amendment is not implicated, and there is no resulting harm to the public.

With respect to Section 5005(c), the Association has not alleged how the public would be harmed if the Court does not grant the requested relief. Presumably, it would argue that implementation of the arbitration award prevents the Postal Service from carrying out the statutes' dual mandate of selecting transportation which "best serves the public interest" while giving "due consideration" to cost. But the Postal Service has broad discretion in carrying out Section 5005(c). *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1256–57 (2d Cir. 1975) (noting that whether to award an HCR contract involves "a number of policy factors" and while the Postal Service may have relied on a mistaken assumption of facts in its selection of a particular contractor, the choice was not any less discretionary).

Moreover, there are competing public interests to consider if the requested relief is granted. For one, the injunctive relief requested by the Association would eviscerate the underlying arbitration award, eroding the important role that arbitration plays in minimizing litigation costs and expediently resolving disputes between parties. *Benefits Commc'n Corp. v. Klieforth*, 642 A.2d 1299, 1303 (D.C. 1994) ("Arbitration has been recognized as a highly desirable and sound alternative to litigation."). In addition, the relief would force the Postal Service to violate its collective bargaining agreement with the APWU, a bedrock of its relationship with the union that represents hundreds of thousands of its employees. *See* Ex. 1 ¶ 2.

17

**Appx23**

Additionally, the requested relief will allow the Association to breach the HCR contracts by evading termination clauses in member contracts. The Association has not (and cannot) establish any legal basis for evading these clauses, yet its request for relief will result in that outcome. This flouts a strong public interest in enforcing contracts. As other courts have recognized, "the public has no interest in destroying contracts . . . ." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1282 (N.D. Ill. 1997), *aff'd in part, vacated in part sub nom. IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998) (cited favorably in *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 79 (D.D.C. 2001) (recognizing enforcement of a reasonable contract as in the public interest)).

## IV.     Supplemental Issues

On December 7, 2016, the Court issued an Order asking the parties to address "(i) whether the August 18, 2016, Arbitration Award should be construed as a sanction based upon a finding of the Postal Service's willful, 'widespread and repeated disregard' for its obligations under the National Agreement with the American Postal Workers Union; and (ii) what, if any impact, construing the Award as such would have on the obligations of the United States Postal Service under 39 U.S.C. § 5005."

For the reasons set forth above explaining that the Court lacks jurisdiction over the Association's claims and that the Association has failed to state a claim upon which relief can be granted, these questions and issues are not material or relevant to the matter before the Court. Further, to the extent the Arbitration Award could be considered a sanction against the Postal Service for wrongs against the Union, granting the relief the Association seeks would simply serve to impair the Union's remedy.

Moreover, to the extent the Court is referencing *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252 (2nd Cir. 1975), the Postal Service submits that the case is distinguishable and does not impact the proper dismissal of the Association's complaint.

In *Myers & Myers*, an action under the Federal Tort Claims Act alleging negligence by the Postal Service in connection with its refusal to renew six "star route" contracts (analogous to the contracts at issue in this case), the Second Circuit found that the cancelling or refusal to renew a contract by the Postal Service generally falls within the discretionary function exception, and that a star route contractor does not have a statutory entitlement to, or even a reasonable expectation in, contract renewals. 527 F.2d at 1256-58. But, the Court found an exception where the refusal to renew the contracts was part of a sanction, or de facto debarment, by the Postal Service against the contractors. *Id*. at 1258.

In this case, there is no such sanction or disbarment against the Association or its members. They remain free to bid on future contracts and suffer no stigma as a result of the contract cancellations. Thus, even if the Arbitration Award is considered a sanction against the Postal Service, it has no effect on the analysis set forth in Argument Sections I-III, *supra*.

Furthermore, the D.C. Court of Appeals, in *Art Metal-U.S.A. v. U.S.*, 753 F.2d 1151 (D.C. Cir. 1985), has been critical of the "flawed analysis" of *Myers & Myers*, noting that the Second Circuit court failed to distinguish between "federal legal duties" derived from federal regulations (as in *Art Metal* and this case) and the use of federal statutes and regulations to prove either that the government has assumed duties under local tort law or that it has breached those duties under principles of negligence per se. 753 F.2d at 1159 n.15. Accordingly, *Myers & Myers* should not be found persuasive and its analysis should not impact the dismissal of this action.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's complaint be

dismissed, and Plaintiff's motion for injunctive relief be denied.

Dated: December 8, 2016            Respectfully submitted,

                                 CHANNING D. PHILLIPS
                                 United States Attorney
                                 D.C Bar #415793

                                 DANIEL VAN HORN
                                 Chief, Civil Division
                                 D.C. Bar # 924092

                   By:    */s/ Jason T. Cohen*
                                 JASON T. COHEN
                                 ME Bar #004465
                                 Assistant United States Attorney
                                 555 Fourth St., N.W.
                                 Washington, D.C. 20530
                                 Phone: (202) 252-2523
                                 Fax: (202) 252-2599
                                 Email: jason.cohen@usdoj.gov

OF COUNSEL:

ERIN E. LYNCH
Attorney
Employment and Labor Law Section
United States Postal Service

**EXHIBIT LIST**

**Exhibit 1**     Declaration of Rickey R. Dean

      Attachment A        Arbitration decision and award in the matter of *United States Postal Service and American Postal Workers Union, AFL-CIO*, No. Q06C-4Q-C 11182451 (Aug. 18, 2016)

      Attachment B        Excerpt from Postal Service Handbook EL-912, *Agreement between United States Postal Service and American Postal Workers Union, AFL-CIO*, 2010-2015

**Exhibit 2**     Declaration of Bridget M. Rice

      Attachment A        Statement of Work, HCR Contract No. 28033

      Attachment B        Statement of Work, HCR Contract No. 19449

      Attachment C        Statement of Work, HCR Contract No. 74030

      Attachment D        Statement of Work, HCR Contract No. 656AA

      Attachment E        Statement of Work, HCR Contract No. 550DA

      Attachment F        Statement of Work, HCR Contract No. 553DA

      Attachment G        Statement of Work, HCR Contract No. 680N9

      Attachment H        Statement of Work, HCR Contract No. 40030

      Attachment I        HCR Terms & Conditions, Issue 12 (Jan. 15, 2013)

      Attachment J        HCR Terms & Conditions (Dec. 14, 2015)

      Attachment K        HCR Terms & Conditions (Aug. 12, 2016)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL STAR ROUTE MAIL
CONTRACTORS ASSOCIATION, INC.,

      Plaintiff

      v.

UNITED STATES POSTAL SERVICE,

      Defendant

                         Civil Action No. 16-2350 (CKK)

---

**ORDER**
(December 19, 2016)

For the reasons stated in the accompanying Memorandum Opinion, it is, this 19th day of

December, 2016, hereby

**ORDERED** that Defendant's [14] and Intervenor's [15] Motion to Dismiss is

**GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's claims are hereby dismissed WITH PREJUDICE

in this court for lack of subject matter jurisdiction under the Contract Disputes Act; and it is

**FURTHER ORDERED** that on this record, Plaintiff's claims as to contracts held by

contractors who are *not* members of Plaintiff Association are dismissed WITH PREJUDICE for

lack of standing; however, it is

**FURTHER ORDERED** that Plaintiff's claims are dismissed WITHOUT PREJUDICE,

insofar as Plaintiff shall not be barred by this Order from seeking relief in the proper forum

should Plaintiff be able to establish standing in the future and if its claims become ripe for

adjudication; and it is

**FURTHER ORDERED** that Plaintiff's [6] Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED WITH PREJUDICE** in this court, but **WITHOUT PREJUDICE** to seek such relief in the appropriate forum.

**SO ORDERED.**

*This is a final, appealable order.*

/s/
_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | | |
|---|---|---|
| MAIL TRANSPORTATION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-934C |
| | ) | |
| UNITED STATES, | ) | (Judge Wolski) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF RICKEY R. DEAN

I, Rickey R. Dean, make the following Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my Declaration is to be filed in the above-captioned civil action in the United States District Court for the District of Columbia and that it is the equivalent to a statement under oath.

1.      I am over the age of 18 and am competent to testify. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon conclusions and determinations reached and made therewith.

2.      I am employed by the United States Postal Service as the Manager, Contract Administration, for the National Agreement between the American Postal Workers Union, AFL-CIO, ("APWU"), and the United States Postal Service.

3.      I work in the Labor Relations Department at Postal Service Headquarters in Washington, DC. As the Contract Administrator, I am responsible for the Postal Service's interpretation and implementation of its collective bargaining agreement ("CBA") with the APWU, which governs the wages, hours, and working conditions of approximately 200,000 postal employees.

4.     I am aware that the Plaintiff in the above-captioned action has filed a Motion for a Temporary Restraining Order and Preliminary Injunction in the United States Court of Federal Claims seeking to prevent the Postal Service from issuing notices of termination for 110 mail transportation contracts.

5.     On August 18, 2016, Arbitrator Shyam Das issued an award ("Das Award" or "Award") in a national-level arbitration case between the Postal Service and the APWU. In the Award, Arbitrator Das found that the Postal Service violated the CBA by failing to properly notify the APWU prior to awarding Highway Contract Renewal ("HCR") contracts to outside suppliers. As a result, Arbitrator Das ordered the Postal Service to convert approximately 110 disputed HCR routes to Postal Vehicle Service ("PVS"), which is made up of APWU employees, for a period of four years.

6.     Under the Article 15.5.A.6 of the CBA, all decisions of an arbitrator are final and binding on both parties.

7.     The Das Award sets a deadline of six months from the date of the Award for the Postal Service to convert the disputed routes to PVS. The deadline is February 18, 2017. The Award allows for the parties to extend this deadline by mutual agreement.

8.     Under the Award, the parties may substitute other routes to be converted to PVS based on particular circumstances.

9.     As the Manager, Contract Administration for the APWU CBA, I am responsible for negotiating over the implementation of the Das Award with the APWU. The Postal Service has agreed with the Union on the identity of the routes to be converted and to extend the deadline for implementation of the Das Arbitration Award to September 1, 2017.

10.     If the Postal Service is enjoined from complying with implementation of the Das Award, the Postal Service anticipates that the Union will seek relief through Arbitrator Das, who has retained jurisdiction to resolve any matters related to implementation of the remedy identified in the Award.

11.     During the arbitration hearings, the APWU sought damages in excess of $336 million with additional damages of $10 million per each future two-week pay period in which the HCR contracts were not terminated and the work was not assigned to PVS drivers.

12.     We anticipate that the APWU, in the absence of the relief it is entitled to under the Arbitration Award, will seek the damages described in paragraph 11 of this Declaration as an alternative remedy.

13.     We also anticipate that if the Postal Service is enjoined from complying with the Arbitration Award, there will be harm to the working relationship between the APWU and the Postal Service. The APWU is relying on the Postal Service to fulfill the commitments the Postal Service made in implementing the Das Award. Failure on the part of the Postal Service to follow through on those bargained-for commitments will unequivocally harm the bargaining relationship between the parties.

14.     Moreover, if the Postal Service is enjoined from enforcing a binding arbitration award, its dispute resolution process with its unions will be undermined. Article 15 of the APWU CBA provides for a binding arbitration process that is relied upon by the Postal Service and the APWU for resolving contractual disputes. Allowing a third party to disrupt that arbitration process by selectively preventing enforcement of a binding arbitration award undercuts the stability of the parties' collective bargaining relationship.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing

Declaration is true and correct.  Executed in Washington, D.C.

07/17/2017
_____
Date

_____
Rickey R. Dean

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

| | | |
|---|---|---|
| MAIL TRANSPORTATION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-934C |
| | ) | |
| UNITED STATES, | ) | (Judge Wolski) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DECLARATION OF BRENT RANEY**

I, Brent Raney, make the following Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my Declaration is to be filed in the above-captioned civil action in the United States Court of Federal Claims and that it is the equivalent to a statement under oath.

1.      I am over the age of 18 and am competent to testify. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon conclusions and determinations reached and made therewith.

2.      I am currently the Acting Manager of Surface Transportation Operations for the United States Postal Service. I assumed this position in December of 2015.

3.      In my capacity as Acting Manager of Surface Transportation Operations, I oversee the Postal Service's transportation network, excluding those vehicles and routes operated by letter carriers.

4.      The Postal Service's transportation network includes the transfer of mail from our largest processing and distribution centers to smaller facilities across the country. Those smaller

facilities then transfer mail to individual post offices where the mail is picked up and delivered by letter carriers.

5.      The Postal Service uses various equipment in its ground transportation of mail, including approximately 50,000 tractor trailers making approximately 90,000 trips daily.

6.      Ground transportation is comprised of approximately 14,000 routes nationwide.

7.      A route can consist of one or more trips, with most Postal Service routes containing multiple trips from one fixed destination to another.

8.      The Postal Service's ground transportation is carried out by both in-house Postal Vehicle Service ("PVS") drivers and contracted Highway Contract Route ("HCR") drivers.

9.      Currently, approximately 90% of ground transportation is operated by HCR as opposed to PVS.

10.     PVS drivers operate equipment that is either owned or leased by the Postal Service.

11.     HCR drivers operate non-postal equipment that is owned or leased by the contractor.

12.     On August 18, 2016, Arbitrator Shyam Das resolved a dispute between the Postal Service and the American Postal Workers Union, AFL-CIO ("APWU") concerning the Postal Service's alleged violation of the parties' collective bargaining agreement in failing to provide the requisite notice to the APWU when the Postal Service intended to renew HCR contacts. Arbitrator Das held that the Postal Service had failed to provide the requisite notice and ordered that the Postal Service convert, for a four-year period, 110 ground transportation routes that had previously been held by HCR to PVS. The award held that "[b]y agreement, the parties may

substitute other route(s) to be converted to PVS service pursuant to this order based on particular circumstances."

13.     On August 19, 2016, I was provided a copy of a list identifying the 110 routes at issue in the arbitration award.

14.     I, along with Ray Wagstaff, a Transportation Specialist on my staff, singled out approximately 59 of the initial 110 routes on the basis that they were not suitable for conversion to PVS.

15.     In the following months, Mr. Wagstaff, along with James Lloyd, a Postal Service Labor Relations Specialist, negotiated with the APWU to substitute those routes in favor of routes that were more suitable for conversion.

16.     The Postal Service based its determination of suitability of conversion to PVS on a number of factors, all of which ultimately related to cost and ensuring the uninterrupted service of mail.

17.     On May 17, 2017, after months of negotiations, the Postal Service and the APWU identified 110 routes that were suitable for conversion to PVS. Over half of those routes were substituted from the original list of 110 that was circulated shortly after Arbitrator Das issued his award.  The parties agreed to extend the deadline to implement the Das Award until September 1, 2017.

18.     To comply with our obligations under the arbitration award, the Postal Service is in the process of hiring PVS drivers as well as management staff while also acquiring the necessary equipment to service routes that will be converted to PVS.

19.     If the Court enjoins the Postal Service from hiring the necessary personnel to perform those routes, the Postal Service will not have adequate existing PVS staffing and

equipment to assume these routes, which will result in a stoppage in the movement of mail along these routes. The result of that stoppage is that the public will experience major disruptions in the collection and delivery of mail for an undetermined time period.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing Declaration is true and correct.  Executed in Washington, D.C.

_7/17/17_
Date

Brent Raney

No. 17-934C
Judge Wolski

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

---

MAIL TRANSPORTATION, INC., *et al.*,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS

---

|  | CHAD A. READLER |
| --- | --- |
|  | Acting Assistant Attorney General |
|  |  |
|  | ROBERT E. KIRSCHMAN, JR. |
|  | Director |
|  |  |
| OF COUNSEL: | FRANKLIN E. WHITE, JR. |
| REDDING C. CATES | Assistant Director |
| Attorney |  |
| United States Postal Service | ADAM E. LYONS |
| 475 L'Enfant Plaza SW | Trial Attorney |
| Washington, DC 20260-1101 | Commercial Litigation Branch |
|  | Civil Division |
|  | U.S. Department of Justice |
|  | P.O. Box 480, Ben Franklin Station |
|  | Washington, DC 20044 |
|  | Tel: (202) 353-2345 |
|  | Fax: (202) 514-7969 |
|  | Email: Adam.E.Lyons@usdoj.gov |
|  |  |
| July 17, 2017 | Attorneys for Defendant |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

STATEMENT OF THE ISSUES ................................................................................. 1

STATEMENT OF THE CASE .................................................................................... 2

    I.    Nature Of The Case ................................................................................... 2

    II.   Statement Of Facts ................................................................................... 2

ARGUMENT ............................................................................................................. 4

    I.    Standards Of Review ................................................................................ 4

       A.   Standard Of Review For A RCFC 12(b)(1) Motion To Dismiss ................. 4

       B.   Standard Of Review For A RCFC 12(b)(6) Motion To Dismiss ................. 4

    II.   The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims ...................... 6

       A.   Plaintiffs Improperly Seek To Challenge The Arbitrator's Decision ........................... 6

       B.   Plaintiffs Have Not Received A Contracting Officer's Final Decision ........................ 8

       C.   Plaintiffs' Purported Bid Protest Is A Contract Administration Claim That Is Not Within The Court's Bid Protest Jurisdiction ............................................................... 10

    III.  Plaintiffs Fail To State A Claim That Postal Service Has Violated The Law ............... 13

       A.   Plaintiffs Fail To State A Bid Protest Based On Government Violation Of A Statute Or Regulation In Conjunction With A Procurement ..................................................... 13

       B.   Plaintiffs Fail To State A Claim Under The Covenant Of Good Faith And Fair Dealing ............................................................................................................... 16

CONCLUSION.........................................................................................................19

ii

# TABLE OF AUTHORITIES

**Cases**

*Alliant Techsystems, Inc. v. United States*,
178 F.3d 1260 (Fed. Cir. 1999) ................................................................................. 9

*Appeals of Temple Contract Station LC*,
No. 6430 (P.S.B.C.A.), 2014 WL 3535068 (July 16, 2014) ........................... 7, 8, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 5

*Balbach v. United States*,
119 Fed. Cl. 681 (2015) .......................................................................................... 11

*BASR P'ship v. United States*,
795 F.3d 1338 (Fed. Cir. 2015) .............................................................................. 13

*Bath Iron Works Corp. v. United States*,
27 Fed. Cl. 114 (1992), *aff'd* 20 F.3d 1567 (Fed. Cir. 1994) .................................... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 4

*Bell/Heery v. United States*,
739 F.3d 1324 (Fed. Cir. 2014) .............................................................................. 13

*Bristol Bay Area Health Corp. v. United States*,
110 Fed. Cl. 251 (2013) ........................................................................................... 5

*Centex Corp. v. United States*,
395 F.3d 1283 (Fed. Cir. 2005) .............................................................................. 17

*Coast Fed. Bank, FSB v. United States*,
323 F.3d 1035 (Fed. Cir. 2003) .............................................................................. 13

*Consumer Prod. Safety Comm. v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980) ................................................................................................ 13

*Dalton v. Sherwood Van Lines, Inc.*,
50 F.3d 1014 (Fed. Cir. 1995) ................................................................................ 11

*Dellew Corp. v. United States*,
108 Fed. Cl. 357 (2012) ........................................................................... 12, 13, 15, 16

iii

**Appx40**

*Distributed Solutions, Inc. v. United States,*
  539 F.3d 1340 (Fed. Cir. 2008) ........................................................................ 10, 11

*Dotcom Assocs. I, LLC v. United States,*
  112 Fed. Cl. 594 (2013) ................................................................................... 16, 18

*E & E Enters. Glob., Inc. v. United States,*
  120 Fed. Cl. 165 (2015) ........................................................................................ 11

*Extreme Coatings, Inc. v. United States,*
  109 Fed. Cl. 450 (2013) .......................................................................................... 4

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) .............................................................................................. 15

*Gov't Tech. Servs. LLC v. United States,*
  90 Fed. Cl. 522 (2009) ...................................................................................... 8, 10

*Hallmark Phoenix 3, LLC v. United States,*
  99 Fed. Cl. 65 (2011) ............................................................................................ 11

*Hardt v. Reliance Standard Life Ins. Co.,*
  560 U.S. 242 (2010) .............................................................................................. 13

*Holley v. United States,*
  124 F.3d 1462 (Fed. Cir. 1997) .............................................................................. 4

*Indium Corp. of America v. Semi-Alloys, Inc.,*
  781 F.2d 879 (Fed. Cir. 1985) ................................................................................ 4

*James M. Ellett Constr. Co. v. United States,*
  93 F.3d 1537 (Fed. Cir. 1996) ................................................................................ 9

*Jennings v. United States,*
  126 Fed. Cl. 764 (2016) ........................................................................................ 11

*John Reiner & Co.,*
  325 F.2d 438 .......................................................................................................... 7

*Kogan v. United States,*
  112 Fed. Cl. 253 (2013) ........................................................................................ 16

*Lal v. M.S.P.B.,*
  821 F.3d 1376 (Fed. Cir. 2016) ............................................................................ 15

iv

**Appx41**

*Lindsay v. United States,*
    295 F.3d 1252 (Fed.Cir.2002) ................................................................. 5

*Ex parte McCardle,*
    7 Wall. 506, 74 U.S. 506 (1868) ............................................................. 6

*Myers & Myers, Inc. v. U. S. Postal Serv.,*
    527 F.2d 1252 (2d Cir. 1975) .................................................................. 14

*Placeway Constr. Corp. v. United States,*
    920 F.2d 903 (Fed. Cir. 1990) ............................................................. 9, 10

*Precision Pine & Timber, Inc. v. United States,*
    *(Precision Pine),* 596 F.3d 817 (Fed. Cir. 2010) .................................... 17

*Pucciariello v. United States,*
    116 Fed. Cl. 390 (2014) ........................................................................... 5

*Ravens Group, Inc. v. United States,*
    78 Fed. Cl. 390 (2007) ........................................................................... 11

*Russell Corp. v. United States,*
    15 Cl. Ct. 760 (1988) .............................................................................. 11

*Salsbury Industries. v. United States,*
    905 F.2d 1518 (Fed. Cir. 1990) ............................................................... 7

*Schlesinger v. United States,*
    182 Ct. Cl. 571, 390 F.2d 702 (1968) ...................................................... 7

*Scott Timber Co. v. United States,*
    692 F.3d 1365 (Fed. Cir. 2012) .............................................................. 18

*Sigma Constr., Inc. v. United States,*
    113 Fed. Cl. 13 (2013) ........................................................................... 18

*SITCO Gen. Trading & Contracting Co. v. United States,*
    87 Fed. Cl. 506 (2009) ............................................................................. 9

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................... 6

*Terrytown SSA, LLC v. United States,*
    No. 09-364C, 2014 WL 5488950 (Fed. Cl. Oct. 30, 2014) ..................... 11

**Appx42**

*TigerSwan, Inc. v. United States*,
   110 Fed. Cl. 336 (2013) ................................................................................................ 17

*Toon v. United States*,
   96 Fed. Cl. 288 (2010) .................................................................................................. 5

*United States v. Sherwood*,
   312 U.S. 584 (1941) ...................................................................................................... 4

*United States v. Testan*,
   424 U.S. 392 (1976) ...................................................................................................... 4

*VFA, Inc. v. United* States,
   118 Fed. Cl. 735 (2014) .............................................................................................. 13

*Volmar Constr., Inc. v. United States*,
   32 Fed. Cl. 746 (1995) ................................................................................................ 10

**Statutes**

9 U.S.C. § 10 ................................................................................................................ 7, 8

10 U.S.C. § 129a ............................................................................................................ 13

28 U.S.C. § 1491(b) ......................................................................................... 1, 3, 11, 13

39 U.S.C. § 5005 ...................................................................................................... *passim*

41 U.S.C.A. § 7103 ........................................................................................................... 9

U.S.C. § 605(a) ................................................................................................................. 8

**Rules**

RCFC 9(h)(3) .................................................................................................................... 5

RCFC 12(b)(1) .................................................................................................................. 4

RCFC 12(b)(6) .............................................................................................................. 4, 5

**Appx43**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | | |
|---|---|---|
| MAIL TRANSPORTATION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-934C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Wolski) |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, moves to dismiss plaintiffs' complaint because the Court lacks jurisdiction over the claims plaintiffs attempt to state and because plaintiffs do not state a claim.

**STATEMENT OF THE ISSUES**

1.     Whether a non-competitive, arbitration-required decision to insource constitutes a "procurement" over which this Court possesses bid protest jurisdiction under 28 U.S.C. § 1491(b)(1).

2.     Whether the Court possesses jurisdiction to decide a Contract Disputes Act (CDA) claim where plaintiffs have not received a contracting officer's final decision.

3.     Whether plaintiffs misread § 5005 to require the Postal Service to use the lowest cost provider of mail transportation service, instead of merely considering cost issues as part of a decision of mail transportation.

4.     Whether plaintiffs misread 39 U.S.C. § 5005 (§ 5005) to apply where Postal Service intends to use its own vehicles and employees to supply mail transportation.

5.      Whether the implied covenant of good faith and fair dealing has any application to a decision of with whom to replace services provided under a contract.

## STATEMENT OF THE CASE

### I.    Nature Of The Case

Plaintiffs are challenging the Postal Service's use of Government services to transport mail in response to an arbitrator's order requiring that mode of transportation.  They contend that complying with the arbitrator's order is a procurement that violates requirements in § 5005, and creates either a bid protest or a violation of the implied covenant of good faith and fair dealing in the contracts under which plaintiffs currently provide mail transportation services.

### II.    Statement Of Facts

Plaintiffs are private entities who have entered into contracts with the Postal Service to provide mail transportation services on various routes (Highway Contract Routes (HCRs)).  Compl. ¶ 11.  (Postal Vehicle Service (PVS).  Mail transportation service through HCRs is differentiated from transportation of mail through Government employees (Postal Vehicle Service (PVS).  Compl. at 1.  Each contract grants the Government a unilateral right of termination.  Compl. Ex. 4 at 10; *see also, e.g.*, Mem. in Supp. of Pl.'s App. for TRO & Mot. for Prelim. Injunc., ECF No. 3 (Pl. Mem.) at Exs. 3.1 § 2.3.3a, 7.1 § 2.3.3a, 11.1 § 2.2.3a."  Plaintiffs reference the contracts throughout their complaint.  *See, e.g.*, Compl. ¶ 11.

In 2011, the American Postal Workers Union, AFL-CIO (APWU) filed a grievance, which led to an arbitration, in which the APWU asserted that the Postal Service improperly used HCRs.  Compl. ¶¶ 23, 26.  Plaintiffs assert that, as part of the arbitration, the parties examined the relative cost of using HCRs instead of PVS.  Compl. ¶ 27.  Ultimately the APWU succeeded on its claim and the arbitrator ordered the Postal Service to transfer 110 routes to PVS.  Compl. Ex. 1 at p. 22 of 22.

2

The Postal Service has announced an intention to terminate plaintiffs' contracts and use PVS to provide mail transportation along the routes plaintiffs currently serve. Pl. Mem. at Ex. 13; Compl. at ¶ 15 (referencing same). Specifically, on June 20, 2017, the Postal Service's General Counsel, Thomas Marshall, wrote to plaintiffs' counsel stating, "[t]he Postal Service and the [APWU] have reached agreement on a list of 110 highway contract routes (HCRs) to be converted to [PSV] by September 1, 2017, pursuant to Arbitrator Das' award. . . . Once the Postal Service has sufficient staffing in place for a particular route, formal notice of cancellation will be provided . . . ." *Id.*

With the exception of plaintiff W.B. Adams, Pl. Mem. at 17 n.6, plaintiffs assert that they have filed CDA claims with the Postal Service contracting officer regarding the alleged failure to follow § 5005. Compl. ¶ 11. None of these CDA claims includes any dispute that the Postal Service is entitled to terminate the contract without cause. Compl. ¶ 11(a)-(k). Instead, each such claim asks for a decision on whether termination of contract "in disregard of 39 U.S.C. § 5005(c) would be a breach of contract." *Id.* No plaintiff has received a contracting officer's final decision regarding its claim. Compl. ¶ 15. Before filing the instant suit, no plaintiff waited the required 60 days from the date of its claim such that the claim could be deemed denied. Compl. ¶ 11(a)-(k).

Plaintiffs state two causes of action. In count I of their complaint, plaintiffs allege that the use of PVS in place of their services is a "violation of statute or regulation in connection with a procurement," specifically a violation of § 5005, and is therefore a matter on which they may lodge bid protests under 28 U.S.C. § 1491(b)(1). Compl. ¶ 13. In count II of their complaint, plaintiffs allege that using PVS on the routes is a violation of § 5005, and therefore is a breach of the implied covenant of good faith and fair dealing. Compl. ¶ 14.

# ARGUMENT

## I.    Standards Of Review

### A.    Standard Of Review For A RCFC 12(b)(1) Motion To Dismiss

It is well settled that this Court is one of limited jurisdiction. *Bath Iron Works Corp. v. United States*, 27 Fed. Cl. 114, 122 (1992), *aff'd*, 20 F.3d 1567 (Fed. Cir. 1994) (citation omitted). Its authority to grant relief against the United States is limited by the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* at 399 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "[I]n a Court of Claims context . . . waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (citations omitted).

In addressing a RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1464 (Fed. Cir. 1997) (citations omitted). However, in deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the Court may consider evidentiary matters outside the pleadings. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

### B.    Standard Of Review For A RCFC 12(b)(6) Motion To Dismiss

 "It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) 'when the facts asserted by the claimant do not entitle him to a legal remedy.'" *Extreme Coatings, Inc. v. United States*, 109 Fed. Cl. 450, 453 (2013) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). "When considering a motion to dismiss brought under RCFC 12(b)(6),

4

**Appx47**

'the allegations of the complaint should be construed favorably to the pleader.'" *Id.* (citation omitted). At the same time, "plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Pucciariello v. United States*, 116 Fed. Cl. 390, 400 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007))). "Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (citation omitted in original)).

The Court may examine exhibits to the complaint, documents relied upon in the complaint, and matters of public record in considering a motion under RCFC 12(b)(6). *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 262 (2013) ("the court need not convert defendant's motion to dismiss into a motion for summary judgment because, in addition to the requirement of RCFC 9(h)(3), it is well established that, in addition to the complaint itself and attached exhibits, the court 'must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' Moreover, '[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'") (internal citations omitted); *Toon v. United States*, 96 Fed. Cl. 288, 296 (2010) ("Courts 'generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record' when deciding a motion to dismiss. However, materials appearing in the record of the case may also be taken into account without converting a motion to dismiss into one for summary judgment.") (citing 5B Wright & Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2004); further citation omitted).

## II.    **The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims**

Plaintiffs inappropriately attempt to challenge an arbitration to which they were not parties, by asserting a bid protest where there is no procurement. They further assert a CDA claim before they have obtained a contracting officer's final decision. The Court does not possess jurisdiction over either of plaintiffs' claims.

"Without jurisdiction the court cannot proceed at all . . . . Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 514 (1868)).

### A.    **Plaintiffs Improperly Seek To Challenge The Arbitrator's Decision**

Although cloaked in the terms of a bid protest or a CDA claim, plaintiffs actually are seeking to challenge the Postal Service's compliance with the arbitrator's decision. That decision is not subject to plaintiffs' challenge and the Court lacks jurisdiction to hear the claims.

Plaintiffs own language shows that they actually attempt to challenge the arbitrator's decision. "The Postal Service has stated that converting these HCR contracts to in-house PVS is required to satisfy an arbitration award arising from a grievance by the American Postal Workers Union (APWU), a union representing postal employees. That is an incorrect reading of the award. Nothing in the award excuses the Postal Service from complying with 39 U.S.C. § 5005(c) in determining which HCR contracts to convert to PVS. *An arbitrator would not have the power to order USPS to violate this statute.*" Compl. at 2 (emphasis added).

Converting routes to PVS is exactly what the arbitrator's award requires the Postal Service to do. Compl. Ex. 1 at p. 22 of 22. The award does not, however, discuss § 5005. *See* Compl. Ex. 1. Accordingly, plaintiffs' implication is that the arbitrator's decision should be declared non-binding as a violation of law. That is a request to vacate the arbitrator's award, *not*

6

a bid protest or contract claim.  As non-parties to the arbitration, plaintiffs cannot challenge the arbitrator's decision.  9 U.S.C. § 10 (arbitration award may only be vacated "upon the application of any *party* to the arbitration.") (emphasis added).

Two cases, *Salsbury Industries v. United States*, 905 F.2d 1518, 1520 (Fed. Cir. 1990), and *Appeals of Temple Contract Station LC*, No. 6430 (P.S.B.C.A.), 2014 WL 3535068 (July 16, 2014), illustrate that plaintiffs only claim here could be in contract.  In *Salsbury*, a disappointed bidder obtained an injunction prohibiting the Postal Service from going forward with a contract with plaintiff and requiring, instead, that the contract be awarded to it.  905 F.2d at 1519.  In order to comply with that injunction, the Postal Service terminated plaintiff's contract for convenience.  *Id.* at 1520.  The claim that the Court heard thereafter was in the nature of a claim for damages for contract termination.  *Id.* at 1521-22.

Not only does that show that plaintiffs do not state a proper claim here, but the Court's resolution of the issue is also instructive:  The Federal Circuit noted that the Postal Service was allowed to terminate when the "contracting officer deems it to be in the best interest of the Postal Service.  It strikes us that few things would be more in the best interest of the Postal Service than to abide by the order of the district court, even if it thought the decision was wrong."  *Id.* at 1521-22.  Indeed, the Court noted that terminations for convenience have been deemed proper even in response to non-binding statements from other Government entities.  *Id.* at 1522 (citing *Schlesinger v. United States*, 390 F.2d 702 (Ct. Cl. 1968) ("the Navy deferred to the views of a Senate subcommittee"); *John Reiner & Co. v. United States*, 325 F.2d 438 (Ct. Cl. 1963) ("compliance with a General Accounting Office ruling")).  Thus, not only do plaintiffs fail to bring a proper claim, even if they phrased their claim appropriately, it would be without merit.

Similarly, in *Temple*, the Postal Service Board of Contract Appeals upheld the Postal Service's termination of a contract pursuant to its agreement with a union. In that case, the Postal Service entered into a memorandum of understanding (MOU) with its union, under which it was required to terminate certain contracts. 2014 WL 3535068 at 3-4. The contract holders raised numerous complaints regarding those terminations, none of which were found meritorious. *Id.* at 3-8.

As a non-party to the arbitration, plaintiffs do not have standing to challenge that decision. 9 U.S.C. § 10(a). The only claim plaintiffs could have here would be for breach of contract for termination, not a bid protest. Because the nature of their claim is a challenge to the arbitrator's decision, however, it is not even a proper CDA claim, and plaintiffs' claims should be dismissed for lack of jurisdiction.

### B.    Plaintiffs Have Not Received A Contracting Officer's Final Decision

Plaintiffs admit that the Court does not possess jurisdiction to consider their CDA claim unless there is a "'CO's final decision on that claim.'" Pl. Mem. at 17 (citation omitted); *see also Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 526 (2009) ("The government points out that defendant has not complied with the CDA requirement that an aggrieved contractor file a written claim with the CO, who must then issue an unfavorable final decision, before a contractor may file a claim with the court.") (citing 41 U.S.C. § 605(a), now codified at § 7104(a)). They further admit that no such decision has occurred. Compl. at ¶ 15. That combination is fatal to jurisdiction under the CDA.

Plaintiffs' contention that they can ignore these requirements because the Postal Service's General Counsel sent them a letter on June 20, 2017, is entirely incorrect. Compl. at ¶ 15. The General Counsel is not the contracting officer. *Id.* (distinguishing the contracting officer and the

8

General Counsel); *see also* 39 C.F.R. 601.104 (conferring the Postal Service's contracting authority on specific positions other than the General Counsel).

Moreover, the letter does not address any claim that plaintiffs have made and, instead, merely states the Government's intention to terminate 110 routes by some further date that may or may not be September 1, 2017. Pl. Mem. at Ex. 13. This document fails both the statutory requirement of a final decision and that the decision come from the contracting officer. *See* 41 U.S.C.A. § 7103 (2011) ("**(3) Contracting officer to decide Federal Government's claims.**-- Each claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer.") (emphasis in original); *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996) ("Thus, for the [Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.") (citation omitted); *SITCO Gen. Trading & Contracting Co. v. United States*, 87 Fed. Cl. 506, 508 (2009) ("Thus, we hear CDA claims only after final decisions by contracting officers."). Accordingly, the Court lacks jurisdiction to consider plaintiffs' CDA claim.

In their memorandum in support of their request for preliminary injunction, plaintiffs raise three cases that they incorrectly characterize as supporting the proposition that the general counsel's letter can be treated as a contracting officer's final decision. Pl. Mem. at 18. Unlike in this case, in each of those cases there was a contracting officer's written statement that the Court deemed a final decision. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990) (the contracting officer "concluded that Placeway was liable because of delayed performance and effectively ruled that damages would be the contract balance, $297,226.12, subject to revision if he concluded that different damages were due at some indeterminate time in

9

the future.  Accordingly, we conclude that the CO made a final decision on the government claim alleging damages because of Placeway's delay."); *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267-68 (Fed. Cir. 1999) ("contracting officer's letter acknowledging that the letter constituted a final decision from which Alliant was entitled to appeal is not fatal to Alliant's action.  A letter can be a final decision under the CDA even if it lacks the standard language announcing that it constitutes a final decision."); *Volmar Constr., Inc. v. United States*, 32 Fed. Cl. 746, 754-55 (1995) (contracting officer's "Voucher and Inspection Report appear to fall within the relaxed final decision standard enunciated in *Placeway*" "even though the contracting officer did not explain the contractor's appeal rights or indicate that the documents represented a final decision").  Indeed, these cases are properly read as treating a contracting officer's written document deciding a claim as a final decision without requiring the inclusion of "'boilerplate'" language specifically saying so.  32 Fed. Cl. at 754 (quoting *Placeway*, 920 F.2d at 907).  Here, plaintiffs do not point to any statement from the contracting officer (indeed, one of the plaintiffs has not even submitted a claim, Pl. Mem. at 17 n.6), there is no final decision, and there is no jurisdiction to address the CDA claim.

### C.  Plaintiffs' Purported Bid Protest Is A Contract Administration Claim That Is Not Within The Court's Bid Protest Jurisdiction

As is illustrated by the fact that plaintiffs advanced a (premature and unripe) claim under the CDA, if anything, this case presents a question of contract administration, not a bid protest, and is not within the bid protest jurisdiction of this Court.  This Court has previously ruled that contract administration claims cannot be stated as bid protests.  In *Government Technology Services, LLC v. United States*, 90 Fed. Cl. 522, 524 (2009) (*GTS*), plaintiff filed a purported bid protest concerning the Government's failure to exercise an extension option on a contract.  The *GTS* plaintiff characterized its action as a bid protest under the broad definition that

10

"'procurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout.'" *Id.* (quoting *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008)) (emphasis in original).

The Court rejected the attempt to turn that contract administration dispute into a bid protest, holding that "[t]he Federal Circuit has made it crystal clear that the CDA is the 'exclusive mechanism' for the resolution of disputes arising, as here, in contract management." *Id.* at 527 (citing *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995). Accordingly, because the Government's decision regarding the option was "concerning an existing contract without a competitive process . . . [GTS was not] a prospective bidder analogous to the plaintiffs in *Distributed Solutions*." *Id.* at 528 (citing 539 F.3d at 1345).

In reaching its conclusion, the *GTS* Court found "helpful" the Government's discussion of cases "which address disputes arising from options and are, without exception, decided under the CDA." *Id.* There is a similar body of claims of wrongful contract termination that are resolved under the CDA. *See Jennings v. United States*, 126 Fed. Cl. 764, 766 (2016) (involving Postal Service); *E & E Enters. Glob., Inc. v. United States*, 120 Fed. Cl. 165 (2015); *Balbach v. United States*, 119 Fed. Cl. 681, 682 (2015); *Terrytown SSA, LLC v. United States*, No. 09-364C, 2014 WL 5488950, at *1 (Fed. Cl. Oct. 30, 2014); *Russell Corp. v. United States*, 15 Cl. Ct. 760, 761 (1988); *see also Ravens Group, Inc. v. United States*, 78 Fed. Cl. 390, 398 (2007) (dismissing a bad faith allegation based on the government's failure to exercise a discretionary option because "28 U.S.C. § 1491(b) provides no jurisdiction for claims of wrongful termination or breach" and "[c]laims for breach must be brought pursuant to the [CDA]").

Although it did not decide the issue in light of its ruling on prudential standing, the Court in *Hallmark Phoenix 3, LLC v. United States*, recognized the difficulty in finding bid protest jurisdiction over an insourcing decision. 99 Fed. Cl. 65, 68 (2011). That case, like this one considered a protest involving a challenge to a decision to hire Federal employees to "in-source" work that had previously been performed by Federal contractors. The Court noted the "pile of assumptions" that were necessary to find the issue to be a legitimate bid protest where, as here, there is no outstanding solicitation for the services at issue, "[n]or is there any assurance there ever will be one." *Id.*

In this case, the act of which plaintiffs complain is the Government's termination of their contracts. The Postal Service is not seeking new contractors for the services plaintiffs currently provide. The arbitrator's award directed the Postal Service to terminate 110 HCR contracts and use PVS on the routes those contractors previously served. Compl. Ex. 1 at p. 22 of 22. The only choice before the Postal Service was whether it would violate the arbitrator's decision. There is no procurement or competition at issue and no jurisdiction here under § 1491(b)(1).

Plaintiffs will likely argue that *Dellew Corp. v. United States*, 108 Fed. Cl. 357 (2012), holds that insourcing is inherently "in connection with" a procurement, such that this matter is within the Court's jurisdiction. Pl. Mem. at 15. First, as explained above, there is no procurement here at all: The Postal Service is taking action in response to an arbitrator's binding decision requiring the use of PVS. Compl. at 2. Plaintiffs are not "disappointed bidders" that have suffered a "competitive injury." They do not allege that Postal Service unlawfully or irrationally awarded contracts to one of their competitors, issued a solicitation with terms that put them at a competitive disadvantage, shifted their work to a competitor's contract without

12

competition, declined to award a contract after they won (or should have won) a private

competition, or otherwise placed them at a disadvantage in relation to their competitors.

Second, in *Dellew*, the Court specifically noted that "Defendant does not appear to

dispute that the in-sourcing decision was made 'in connection with a procurement or proposed

procurement,' as defined by the Federal Circuit." *Dellew*, 108 Fed. Cl. at 370. Where the

Government did not in fact challenge that conclusion, the guidance on this point provided in

*Dellew* is minimal, at best.

**III.   Plaintiffs Fail To State A Claim That Postal Service Has Violated The Law**

**A.    Plaintiffs Fail To State A Bid Protest Based On Government Violation Of A Statute Or Regulation In Conjunction With A Procurement**

Plaintiffs misread § 5005 for their argument of a statutory violation in the use of PVS.

"We begin with the familiar canon of statutory construction that the starting point for interpreting

a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to

the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety

Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *see also Bell/Heery v. United States*,

739 F.3d 1324, 1330 (Fed. Cir. 2014) ("'Contract interpretation begins with the language of the

written agreement.'") (quoting *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038

(Fed. Cir. 2003)); *see also, e.g.*, *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251

(2010).  "[T]he 'cardinal canon' of statutory construction is that courts must presume that a

legislature says in a statute what it means and means in a statute what it says there." *BASR

P'ship v. United States*, 795 F.3d 1338, 1358 (Fed. Cir. 2015).

Section 5005(c) does not state that the Postal Service must use a private carrier where

that carrier's cost is less.  The statute in fact only requires the Postal Service to give "due

consideration" to the "cost of the transportation service under each mode."  Plaintiffs admit that

the Government did consider the costs of each of mode of service.  Compl. at ¶ 27.  That is fatal to plaintiffs' claim because the statute says the Government "*shall* use the mode of transportation which best serves the public interest," (emphasis added), but only give "due consideration" to the cost.  The Government has discretion in its analysis of the public interest under § 5005.  *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1256–57 (2d Cir. 1975).  Where it is undisputed that the Government did consider the cost of using HCR instead of PVS, and the Government has discretion in evaluating the public interest, plaintiffs do not state a claim.

In addition, the plain language of the statute makes clear that its provisions only apply when the Postal Service seeks to obtain private mail transportation.  Because this is a case where the Postal Service has been required to provide mail transportation with its own resources, the statute does not apply.  Accordingly, to the extent that the "claims set forth in the Complaint challenge the Postal Service's 'alleged violation of statute or regulation in connection with a procurement,'"  Compl. at ¶ 13 (quoting 28 U.S.C. § 1491(b)), plaintiffs fail to state a claim.

Section 5005 provides the conditions under which the Postal Service "may obtain mail transportation service."  39 U.S.C. § 5005(a).  For "surface and water transportation" the Postal Service may obtain service "under such terms and conditions as it deems appropriate, subject to the provisions of this section."  *Id.* at § 5005(a)(3).  In other words, no portion of the statute applies unless the Postal Service seeks mail transportation services, and the provisions of § 5005 after subsection (a) section are only applicable where the Postal Service seeks a private contractor to provide services under (a)(3).  The language on which plaintiffs rely is found in subsection (c) of the statute.  Therefore, under the plain statutory language, the language on

14

which plaintiffs rely only applies in the case where the Postal Service is considering using

private transport.

Not only does that conclusion come from the language of subsection (a)(3), but it is also

supported by the fact that each subsection of the statute after subsection (a)(3) specifically

provides that it applies only to private contracts for the transportation of mail. *Id.* at § 5005(b)(1)

("Contracts for the transportation of mail procured under subsection (a)(3)"), (b)(2) ("A contract

under subsection (a)(3)"), (b)(3) ("Any contract between the Postal Service and any carrier or

person."), (c) ("by contract under subsection (a)(3)"). "It is a 'fundamental canon of statutory

construction that the words of a statute must be read in their context and with a view to their

place in the overall statutory scheme.'" *Lal v. M.S.P.B.*, 821 F.3d 1376, 1378 (Fed. Cir. 2016)

(quoting *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133

(2000) (further citation omitted)). The language in subsection (c) must be read in light of the

limitation on throughout § 5005.

The necessary result of this language is that the cost comparison language in subsection

(c), on which plaintiffs rely for their claims, only applies when the Government contemplates

using a private carrier for mail transportation. There is no similar requirement under this statute

where the Postal Service decides to use postal employees for transportation of the mail.

That plaintiffs do not state a claim that the Postal Service failed to comply with § 5005 is

further demonstrated by comparison with those cases in which there is a statutory mandate to

consider cost in any change in the type of provider of Government service. For example, in

*Dellew*, 108 Fed. Cl. at 360, plaintiff could challenge insourcing as a violation of law where

there was a statutory requirement that the Department of Defense "shall use the least costly form

of personnel" for services and "consider particularly the advantages of converting from one form

15

of personnel (military, civil, or private contract) to another." *See also id.* at 375 (analyzing claim

under statutory requirement of a cost comparison for any transfer of services between

Government and private sources). The language at issue in *Dellew* shows that Congress is more

than capable of specifying when an analysis of cost is required for any transfer of service

providers ("converting from one form of personnel (military, civil, or private contract) to

another") and that it did not do so in 39 U.S.C. § 5005.

**B.      Plaintiffs Fail To State A Claim Under The Covenant Of Good Faith And Fair Dealing**

Plaintiffs' claim under the covenant of good faith and fair dealing fails because (1) there

is no violation of § 5005 here and (2) the alleged illegality relates to who will perform these

services after termination of the contracts, not to the termination of the contracts at all.

> To state a claim for breach of the implied covenant of good
> faith and fair dealing, a party must do more than allege a simple
> breach of contract. Specifically . . . a party generally must allege
> some kind of "subterfuge[ ]" or "evasion[ ]," such as "evasion of
> the spirit of the bargain, lack of diligence and slacking off, willful
> rendering of imperfect performance, abuse of a power to specify
> terms, [or] interference with or failure to cooperate in the other
> party's performance."

*Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 596 (2013) (quoting Restatement

(Second) of Contracts § 205 (1981)). Here, plaintiffs do not allege any of these factors.

As an initial matter, as discussed above, plaintiffs admit the Government considered the

cost of private versus Government services and the statute does not require award to the lowest

price option. Because plaintiffs' interpretation of the statute is erroneous, the claim based on that

erroneous interpretation does not stand.

Second, a claim in breach of the covenant of good faith and fair dealing must allege some

"evasion of the spirit of the parties' bargain," or similar activity defeating the agreement the

parties reached. *Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 596 (2013); *Kogan v.*

16

*United States*, 112 Fed. Cl. 253, 265 (2013) ("Government contracts, like all other contracts, include an implied duty of good faith and fair dealing, which requires that each party not interfere with the other party's rights under the contract.") (citing *Precision Pine & Timber, Inc. v. United States (Precision Pine)*, 596 F.3d 817, 828 (Fed. Cir. 2010); *Centex Corp. v. United States (Centex)*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). "Significantly, a party's contractual obligations are not expanded by the implied duty of good faith and fair dealing." *Id.* (citing 596 F.3d at 831; further citations omitted).

Plaintiffs, moreover, do not dispute that the Government is entitled to terminate their contracts as it proposes to do here. The Postal Service has the unilateral right to terminate plaintiffs' contracts. *See, e.g.*, Pl. Mem. at Exs. 3.1 § 2.3.3a, 7.1 § 2.3.3a, 11.1 § 2.2.3a. Even without acknowledging that language, plaintiffs could not validly challenge the right of termination under the covenant of good faith and fair dealing, because this Court has expressly determined that no such challenge can be made:

> Importantly, where the contract authorizes the government to take action that may harm the contractor, the government may exercise that right without triggering a claim for breach of good faith and fair dealing. Put another way, if the government has the contractual right to terminate a contract for convenience, the government may exercise that right without breaching the duty of good faith and fair dealing.

*TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 345–46 (2013) (internal citations omitted). For that matter, if the contracts did not grant the Postal Service unilateral termination rights, plaintiffs would have brought suit in breach of contract. Even in that case, however, plaintiffs would not have a viable claim: the Federal Circuit has upheld the Postal Service's exercise of discretion in terminating a contract in response to a court order and acknowledge the propriety of doing so even in response to nonbinding statements. *Salsbury Indus. v. United States*, 905 F.2d

17

1518, 1520 (1990); *see also Appeals of Temple Contract Station LC*, No. 6430 (P.S.B.C.A.), 2014 WL 3535068 (July 16, 2014) (upholding contract termination in light of union agreement).

Because plaintiffs cannot base their claim on the termination of their contracts, they instead rely on the alleged violation of law in using PVS: "[t]he Postal Service's determination to terminate Plaintiffs' contracts *and* convert them to in-house PVS service without complying with Section § 5005(c) breaches the Postal Service's implied duty of good faith and fair dealing to each Plaintiff." Compl. ¶ 49 (emphasis added); *see also id.* ¶ 14 (alleging violation of covenant because Government is taking action "without complying with 39 U.S.C. § 5005."). Even if the Postal Service was making a choice here, the choice of what mode of transportation to use after termination of plaintiffs' contracts would not be related to the contracts at all. Accordingly, such a choice could not defeat plaintiffs' contract expectations. *Dotcom*, 112 Fed. Cl. at 596 (standard for good faith and fair dealing claim). Indeed, the allegation more accurately relates to the Government's decision on not forming new contracts. The covenant of good faith and fair dealing "'does not deal with good faith in the formation of a contract.'" *Sigma Constr., Inc. v. United States*, 113 Fed. Cl. 13, 23 (2013) (quoting *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (quoting Restatement (Second) of Contracts § 205 cmt. c. (1981)). Where plaintiffs cannot challenge the fact of the terminations themselves, they cannot create a claim in breach of the covenant of good faith by asserting that the Government's decisions on whom to hire after terminating the contracts is a violation of contractual expectations.[1]

---

[1] Plaintiffs also assert violations of good faith and fair dealing in the Government's litigation of the arbitration, its not negotiating with them regarding its decisions, and its recruiting plaintiff employees. Compl. at ¶ 49(b)-(d). Section 5005 has no application to any of these acts and plaintiffs do not identify any other statute that is purportedly violated, allegedly creating a breach of the implied duty. Compl. at ¶ 49 (Postal Service "determination to terminate

18

## CONCLUSION

For all of these reasons, the United States respectfully requests that the Court dismiss

plaintiffs' complaint.

                                 Respectfully submitted,

                                 CHAD A. READLER
                                 Acting Assistant Attorney General

                                 ROBERT E. KIRSCHMAN, JR.
                                 Director

OF COUNSEL:               s/ Franklin E. White
REDDING C. CATES       FRANKLIN E. WHITE, JR.
Attorney                  Assistant Director
United States Postal Service
475 L'Enfant Plaza SW     s/ Adam E. Lyons
Washington, DC 20260-1101  ADAM E. LYONS
                                 Trial Attorney
                                 Commercial Litigation Branch
                                 Civil Division
                                 U.S. Department of Justice
                                 P.O. Box 480, Ben Franklin Station
                                 Washington, DC 20044
                                 Tel: (202) 353-2345
                                 Fax: (202) 514-7969
                                 Email: Adam.E.Lyons@usdoj.gov

July 17, 2017               Attorneys for Defendant

---

Plaintiffs' contracts and converting them to PVS without complying with 39 U.S.C. § 5005 is a breach of the implied duty of good faith and fair dealing.").

    Moreover, plaintiffs have not identified any way in which their contractual expectations are violated by these acts. If plaintiffs had wanted to require the Government to discuss its litigation strategies with them, negotiate with them prior to executing its contractual termination rights, or not to recruit their employees, they could have negotiated for such requirements. They did not and the covenant of good faith and fair dealing does not create such rights here.

19