No.  17-934C
Judge Wolski

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

---

MAIL TRANSPORTATION, INC., *et al.*,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

---

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:                              FRANKLIN E. WHITE, JR.
REDDING C. CATES                         Assistant Director
Attorney
United States Postal Service             ADAM E. LYONS
475 L'Enfant Plaza SW                    Trial Attorney
Washington, DC 20260-1101                Commercial Litigation Branch
                                         Civil Division
                                         U.S. Department of Justice
                                         P.O. Box 480, Ben Franklin Station
                                         Washington, DC  20044
                                         Tel:  (202) 353-2345
                                         Fax:  (202) 514-7969
                                         Email:  Adam.E.Lyons@usdoj.gov

July 26, 2017                            Attorneys for Defendant

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... iii

ARGUMENT .............................................................................................................................. 1

    I.    Plaintiffs Are Seeking To Challenge The Arbitrator's Requirement To Transfer Service From HCR To PVS ........................................................................................... 1

    II.    There Is No Procurement At Issue And No Bid Protest To Pursue ................................ 2

    III.    That The Postal Service Is Acting Within Its Contractual Rights Does Not Create A Bid Protest ......................................................................................................................... 7

    IV.    Plaintiffs Confuse A Requirement To Consider Cost With A Requirement To Use The Lowest Cost Provider ...................................................................................................... 8

    V.    Under The Plain Language Of Section 5005(a), The Subsections Thereafter Only Apply When The Postal Service Is Obtaining Mail Transportation Service ............................. 9

    VI.    To The Extent Plaintiff Has Any Claim, It Would Be Under The CDA ...................... 11

    VII.    The CDA Claim Cannot Proceed Without A Contracting Officer's Final Decision ..... 13

    VIII.    Plaintiffs' Interpretation Of A 1975 Form Is Not Relevant .......................................... 15

    IX.    Exercise Of A Contractual Termination Right Does Not Violate The Covenant Of Good Faith And Fair Dealing .................................................................................................. 16

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE(S)**

*Alliant Techsystems, Inc. v. United States,*
    178 F.3d 1260 (Fed. Cir. 1999) ............................................................................ 14

*BLR Group of America Inc. v. United States,*
    84 Fed. Cl. 634, 648 (2008) ........................................................................... 13, 14

*Caraballo v. United States,*
    No. 2016-1628, 2017 WL 2333111 (Fed. Cir. May 30, 2017)................................. 16

*Connecticut Nat. Bank v. Germain,*
    503 U.S. 249 (1992)............................................................................................ 10

*Consumer Product Safety Commission v. GTE Sylvania, Inc.,*
    447 U.S. 102 (1980).............................................................................................. 9

*CW Government Travel, Inc. v. United States,*
    63 Fed. Cl. 369 (2004)....................................................................................... 14

*Dalton v. Sherwood Van Lines, Inc.,*
    50 F.3d 1014 (Fed. Cir. 1995) ............................................................................ 12

*Dellew Corporation v. United States,*
    108 Fed. Cl. 357 (2012) ............................................................................. 3, 5, 7, 8

*Distributed Solutions, Inc. v. United States,*
    539 F.3d 1349 (Fed. Cir. 2008) ........................................................................ 2-4

*Elmendorf Support Services Joint Venture v. United States,*
    105 Fed. Cl. 203 (2012) ................................................................................... 6-8

*Government Technology Services, LLC v. United States,*
    90 Fed. Cl. 522 (2009) ................................................................................. 11, 14

*Hallmark Phoenix 3, LLC v. United States,*
    99 Fed. Cl. 65 (2011) ......................................................................................... 6

*Kellogg Brown & Root Servs. v. United States,*
    115 Fed. Cl. 46, 56 (2014) ............................................................................... 13

*Ingersoll-Rand* Co. v. United States,
    780 F.2d 74 (D.C. Cir. 1985)............................................................................... 3

*LABAT-Anderson, Inc. v. United States*,
 65 Fed. Cl. 570 (2005) ................................................................................................... passim

*Minesen Co. v. McHugh*,
 671 F.3d 1332 (Fed. Cir. 2012) ................................................................................................ 12

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
 527 F.2d 1252 (1975)................................................................................................................ 11

*Nat'l Star Route Contractors Assoc., Inc. v. United States Postal Serv.*,
 223 F. Supp.3d 14 (D.D.C. 2016).......................................................................................... 2, 3

*Placeway Constr. Corp. v. United States*,
 920 F.2d 903 (Fed. Cir. 1990) ................................................................................................. 14

*Salsbury Industries v. United States*,
 905 F.2d 1518 (Fed. Cir. 1990) ............................................................................................. 8, 12

*Santa Barbara Applied Research, Inc. v. United States*,
 98 Fed. Cl. 536 (2011) .......................................................................................................... passim

*Starbuck v. City & Cty. of San Francisco*,
 556 F.2d 450 (9th Cir. 1977) ................................................................................................... 10

*Triad Logistics Services Corp. v. United States*,
 No. 11-43C, 2012 WL 5187846, (Fed. Cl. Apr.16, 2012)................................................. 4, 5, 6

*VFA, Inc. v. United States*,
 118 Fed. Cl. 735 (2014) ............................................................................................................. 7

*Volmar Constr., Inc. v. United States*,
 32 Fed. Cl. 746 (1995) .............................................................................................................. 14

**<u>STATUTES</u>**

9 U.S.C. § 10(a) (2002)..................................................................................................................... 2

28 U.S.C. § 1491(b)(1) (2011)....................................................................................................... 5, 7

39 U.S.C. § 1207(c)(2) (2006) .......................................................................................................... 2

39 U.S.C. § 5005 (1948) ............................................................................................................ 10, 11

39 U.S.C. § 5005 (2006) ........................................................................................................... *passim*

41 U.S.C. § 7103(f)(4) ............................................................................................................... 13

**OTHER AUTHORITIES**

*Appeals of Temple Contract Station LC,*
   No. 6430 (P.S.B.C.A.), 2014 WL 3535068 (July 16, 2014) .................................................... 12

H.R. Rep. 80-2003, 1948 U.S.C.C.A.N. 1864, 1866 (1948) ....................................................... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | |
|---|---|
| MAIL TRANSPORTATION, INC., et al., ) | |
| ) | |
|      Plaintiffs, ) | |
| ) | |
| v. ) | No. 17-934C |
| ) | |
| THE UNITED STATES, ) | (Judge Wolski) |
| ) | |
|      Defendant. ) | |
| _____) | |

## **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Pursuant to the Court's scheduling order dated July 14, 2017, defendant, the United States, files this reply in support of its motion to plaintiffs' complaint.

## **ARGUMENT**

**I.      Plaintiffs Are Seeking To Challenge The Arbitrator's Requirement To Transfer Service From HCR To PVS**

Plaintiffs attack the legal sufficiency of the arbitrator's decision with their argument that there must be a 39 U.S.C. § 5005 cost analysis approving the transfer of any route from Highway Contract Route (HCR) to Postal Vehicle Service (PVS). Pls.' Opp. to Mot. to Dismiss, ECF No. 24 (Opp.) at 10-11.[1] They contend that routes can only transfer if the analysis shows that PVS is less expensive that HCR. They do not concede that any routes must be transferred regardless of what this analysis shows.

This is a challenge to the arbitrator's decision that there are 110 routes that *will* be transferred. Plaintiffs would have the Court ignore that their argument could prevent the transfer of any routes. Although they argue that the award "does not prevent the Postal Service from

---

[1] References to pages in the Opp. and to defendant's motion to dismiss, ECF No. 20, (Def. Mot.) are to the ECF number pages.

making a § 5005(c) determination," Opp. at 7, they fail to reconcile their position with the fact

that do not address that the Postal Service would violate the arbitrator's decision if it were to

determine that it was not going to transfer routes to PVS because transferring any routes is not in

the public interest under § 5005(c).  *Id.* at 11.

This is not a procurement, but rather a termination of several contracts and an

appointment of postal employees to handle 110 previously HCR routes.  The decision does not

provide that "up to" 110 routes are to be transferred, but rather orders the transfer of that number

of routes.  There is no room to argue with that transfer, except by challenging the arbitrator's

decision.  As non-parties to the arbitration, that is something plaintiffs cannot do.  9 U.S.C. §

10(a) (2002); *see also* 39 U.S.C. § 1207(c)(2) (2006) ("Decisions of the arbitration board shall be

conclusive and binding on the parties.").

## II.    There Is No Procurement At Issue And No Bid Protest To Pursue

Plaintiffs ignore the fundamental requirements of a bid protest in their attempt to fit this

case – a non-party challenge to an arbitration – into a permissible form.  As plaintiffs admit, bid

protest jurisdiction applies only to the "'acquisition process.'"  Opp. at 6 (quoting *Distributed*

*Solutions, Inc. v. United States*, 539 F.3d 1340. 1345-46 (Fed. Cir. 2008)).  They ignore,

however, that there is no acquisition process here:  There is no solicitation, no response, no

evaluation, no competition, and, indeed, no decision to review acquisition options on behalf of

the Government.  To the contrary, the Government is acting in response to a binding arbitration

decision requiring it to replace 110 HCR routes with PVS.  Def. Mot. at 2.  The Postal Service

has not engaged in any "''process for determining a need for property or services,'''"  Opp. at 6

(citations omitted), as between HCR and PVS.  Because it does not have the fundamental

characteristics that plaintiffs identify as being necessary to an acquisition process, this matter is

not a bid protest and the Court does not possess bid protest jurisdiction over it.  *See also Nat'l*

*Star Route Contractors Assoc., Inc. v. United States Postal Serv.*, 223 F. Supp. 3d 14, 35 (D.D.C. 2016) (finding that the complaint by plaintiffs' industry association sounded in breach of contract, not bid protest, because it "'complains of [prospective] wrongful termination of its own contract with the government.") (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79 (D.C. Cir. 1985)).

It is only by ignoring the requirements to find a procurement that plaintiffs can argue that *Dellew Corporation v. United States* and the other military insourcing cases support their claim. Opp. at 5. The facts in *Dellew* are that the Air Force examined existing contracts to determine whether the services provided thereunder were more cost-effectively provided by civilian contractors, as part of determining by what mode to acquire those services. 108 Fed. Cl. 357, 361-65 (2012). It was in that context that the Air Force actions were part of the "'process for determining a need for property or services'" as that term is used in *Distributed Solutions*, and in which the Air Force was statutorily required to engage in a cost-benefit analysis. *Id.* at 371 (quoting *Distributed Solutions*, 539 F.3d at 1346). Fundamentally, in *Dellew*, the Government was voluntarily engaging in a process of considering how to go about acquiring services, as part of which a cost analysis was a necessary step. That makes *Dellew* a procurement, and distinguishes it from the case before the Court.

All of the other cases plaintiffs bring to the Court's attention are similarly within the Department of Defense's unique procurement procedure for considering whether to use private or public services, and begin with the Government's affirmative decision to consider what provider of services to use, and where statutory authority set forth a procurement process beginning with a cost analysis to do so. Thus, in *Santa Barbara Applied Research, Inc. v. United States*, 98 Fed. Cl. 536, 542 (2011), *see* Opp. at 5, the Court held that it only possessed

jurisdiction when "the government's in-sourcing decision was made 'in connection with a procurement.'"  The *Santa Barbara* Court relied on the fact of a decision "made for the purpose of determining the need for contract services" to find that there was a procurement at issue.  *Id.* at 543.  Here, however, the Government has been compelled to use PVS and there is no similar decision "made for the purpose of determining the need for contract services," and no procurement.

*Triad Logistics Services Corp. v. United States*, No. 11-43C, 2012 WL 5187846, at *1-3, (Fed. Cl. Apr.16, 2012) (unpublished), *see* Opp. at 5, involves the military's *decision* to stop using outside contractors and replace them with Government workers.  In deciding there was a procurement at issue, the Court looked to the Congressional definition of procurement as "*beginning with the process for determining a need . . . .*"  *Id.* at *12.  It then concluded that "[i]n order to have protest jurisdiction in the Court of Federal Claims, a protestor, thus, must 'demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition . . . .'".  *Id.* at *13 (quoting *Distributed Solutions* at 1346).  Again, that is not what has occurred in the case before the Court.  Here, the Postal Service has not initiated anything, but instead, is required by an enforceable order to transfer routes.  The Postal Service is not considering how to procure, but rather complying with a binding decision.  There is no procurement under the law as stated in *Triad*.

The third case that plaintiffs draw to the Court's attention, *LABAT-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 574 (2005), *see* Opp. at 5, is similarly based on the Government's consideration of whether to procure from private or public resources:  "LABAT alleges that the Government decided to perform the work in-house without first conducting a competitive solicitation and a public/private cost comparison, which violated numerous sources of law that

4

mandate the procurement of supplies and services from the private sector." Thus, in *LABAT*, plaintiff specifically alleged that a procurement was at issue and, the Government's use of a purported OMB waiver of procurement requirements was the nature of the dispute. *Id.* at 572. Here, there is nothing similar and *LABAT* is inapposite.

In all of these cases, the principal issues were actually whether the incumbent contractor could assert prudential standing and whether it was an "interested party" for the purposes of 28 U.S.C. § 1491(b)(1) (2011); there was a no real dispute over whether a procurement decision had been made in those cases. *See Dellew*, 108 Fed. Cl. at 370 ("Defendant does not appear to dispute that the in-sourcing decision was made "in connection with a procurement or proposed procurement"); *Santa Barbara*, 98 Fed. Cl. at 542 ("There appears to be no dispute that the Air Force's decision to in-source the work SBAR had been performing at four Air Force bases and continues to perform at five other locations is a decision that was made 'in connection with a procurement'") (citation omitted); *Triad*, at *6 (identifying Government's motion as asserting that plaintiff "is not an interested party" and "lacks prudential standing"); *LABAT* at 574 ("The district court agreed with defendant that this case involved a procurement"). Plaintiffs, as they do with regard to *Dellew*, would likely assert that this lack of challenge supports their argument, claiming that the fact that a point was not at issue in those cases must mean it is beyond dispute here. Opp. at 6-7. That is not correct. Unlike in those military cases, where the Government was engaged in examining the question of how to procure services, which question came with legal requirements to be resolved as part of the answer, in the present case the Postal Service is not making a decision on whether or not to procure from any source. Def. Mot. at 2. Instead, the Postal Service is reversing previously-made outsourcing decisions and giving work back to its employees, as the arbitrator has directed the Postal Service to do. That decision was not

predicated on a "process for determining a need for property or services," but rather on an arbitrator's decision that the needed work must be performed by USPS employees. That fundamentally distinguishes these situations.

The one case plaintiffs cite in which the Government appears to have questioned whether there was a procurement, *Elmendorf Support Services Joint Venture v. United States*, 105 Fed. Cl. 203, 205 (2012), *see Opp.* at 5, is similarly unhelpful to them because the facts there show an actual decision to engage in a procurement evaluation. In that matter, the Air Force considered whether to continue to obtain services from outside contractors. The Court found a procurement because "the substance of the Air Force's *decision* here was to stop procuring services from plaintiff and instead to use government employees. Because that *decision* necessarily included the process for 'determining the need for . . . services' that plaintiff currently provides, the in-sourcing decision-making process was 'in connection with a procurement or proposed procurement' . . . ." *Id.* at 208 (emphasis added). Indeed, *Elmendorf* rested its decision that there was a procurement, in part, on *Santa Barbara*, *Triad*, and *LABAT*, in which the same facts made it undisputed that there was a procurement. *Id.* Because those are not the facts here, *Elmendorf* does not lead to the conclusion that there is a procurement at issue in this case.

Plaintiffs also contend that the Court should ignore the concern expressed in *Hallmark Phoenix 3, LLC v. United States*, 99 Fed. Cl. 65, 68 (2011), regarding the "pile of assumptions" that were necessary to find the issue to be a legitimate bid protest where, as here, there is no outstanding solicitation for the services at issue, "[n]or is there any assurance there ever will be one." Opp. at 7. They argue that this conclusion is *dicta* and that, because *Hallmark* was decided on prudential standing issues, it should be ignored. *Id.* In our motion, we acknowledged that *Hallmark* was decided on prudential standing grounds. Def. Mot. at 18. That fact, however,

does not diminish the validity of the point the Court made there:  An insourcing is only rarely going to fit within the confines of a bid protest.  In the line of military insourcing cases, the fact that the Government was engaged in an acquisition process of deciding how to acquire services created the beginning of a procurement.  Here, there is no such decision, and no procurement. *See, e.g.*, *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 742-43 (2014) (finding an insourcing was not within bid protest jurisdiction where it did not match the facts of the military insourcing cases).

### III.   That The Postal Service Is Acting Within Its Contractual Rights Does Not Create A Bid Protest

Plaintiffs' claim that the Court possesses bid protest jurisdiction because "the Postal Service's statutory violation cannot be addressed entirely through a Contract Disputes Act claim," Opp. at 9, entirely misapprehends the nature of the Court's bid protest jurisdiction.  The Court possesses bid protest jurisdiction to hear "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2011).  Bid protest jurisdiction is not a catch-all to rectify complaints of actions that the Government is entitled to take.

Plaintiffs reference the "interested party" requirement of bid protest jurisdiction, and the discussion of the same in *Santa Barbara*, *Elmendorf*, *LABAT*, and *Dellew*, as though it supports their conclusion that bid protest jurisdictions exists wherever a party to a contract is affected by a Government action.  Opp. at 5-6.  That is not the correct reading of this language.  To the contrary, the "interested party" analysis in each of these cases went to whether a party could fit within the limited scope of bid protest jurisdiction, not to the idea that bid protest jurisdiction

was a catch-all for otherwise invalid complaints.  *Santa Barbara*, 98 Fed. Cl. at 542; *Elmendorf*, 105 Fed. Cl. at 208; *LABAT*, 65 Fed. Cl at 575; *Dellew*, 108 Fed. Cl. at 371.

## IV.    Plaintiffs Confuse A Requirement To Consider Cost With A Requirement To Use The Lowest Cost Provider

In their complaint, plaintiffs admitted that the Postal Service considered cost as part of the arbitration.  Compl. ¶ 27.  In their response, plaintiffs admit that the Postal Service not only considered cost of the routes at issue in the arbitration, but actually considered the costs of each of the 110 routes at issue in this matter, specifically, when it issued each of the four-year contracts at issue here.  Opp. at 21.

"Due consideration of cost" is all that § 5005 requires.  By plaintiffs' double admission, that occurred.[2]

What plaintiffs really mean is that if HCR service is less expensive that PVS, the Postal Service must use HCR.  Opp. at 22 ("If the Government intends to rely on the original cost comparisons to discharge its obligations under § 5005(c), there would be no basis to convert the contracted routes to PVS.").  If that were the case, then no route could ever be converted to PVS, because HCR is always cheaper, and the Postal Service cannot comply with the arbitrator's award.  That is not what the statute requires.

What plaintiffs continue to miss is that that weight of the arbitrator's decision changes the balance of HCR versus PVS vis-à-vis the public interest for these 110 routes.  Although cost was considered, it was outweighed by other considerations.  As the Court stated in *Salsbury*, 905 F.2d at 1522, if "deference to the nonbinding views of those political bodies supports a convenience

---

[2]  Indeed, in his declaration in support of our response to plaintiffs' motion for preliminary injunction, Postal Service official Brent Raney explained that he considered cost in determining what 110 routes would ultimately be transferred to PVS.  Def. Resp. in Opp. to Application for TRO and Mot. for Prelim. Injunc., ECF No. 21, at Appx36, ¶ 16.

termination, it could hardly be otherwise when the contract is terminated because of an order of a United States district court." Here, by plaintiffs' admission, the Postal Service knows the cost differential favors HCR and, with due consideration of that point, made the determination that the public interest favored transfer of these particular 110 routes to PVS. Even under plaintiffs' reading, that is all the statute requires.[3]

### V. Under The Plain Language Of Section 5005(a), The Subsections Thereafter Only Apply When The Postal Service Is Obtaining Mail Transportation Service

In looking to subsection (c) without the context of the preceding subsection (a), plaintiffs entirely misread § 5005. Section 5005 provides the conditions under which the Postal Service "may obtain mail transportation service," and subsection (a)(3) states that it may obtain service "under such terms and conditions as it deems appropriate, *subject to the provisions of this section*." *Id.* at § 5005(a)(3) (emphasis added). Under that plain language the provisions after (a)(3) only apply when the post service is obtaining mail transportation service.

Statutory interpretation of clear language begins and ends with the language of the statute. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Accordingly, plaintiffs' explication of their reading of the history of postal interpretations of the statute are irrelevant. Opp. at 18-21.[4] Plaintiffs are also incorrect that the Government's reading

---

[3] Plaintiffs quote a portion of the district court order regarding the alleged need for a § 5005 analysis. Opp. at 12. Even in that language, however, the discussion is that the Postal Service will choose the routes based on what "best serves the public interest," not based on the lowest cost. *Id.* (quoting 223 F. Supp. 3d 14, 23-24 (D.D.C. 2016).

[4] This includes plaintiffs' reference to a 1975 stipulation that was filed in a Federal court. That document is not a court's interpretation of the statute and does not have bearing on the plain

of the statute reads out the "or by Government motor vehicle" language.  Opp. at 17-18.  To the contrary, that language simply restates what the Government is doing under subsection (a)(3): Considering whether to replace PVS with HCR.  Equally, if plaintiffs are correct that § 5005(c) applies to insourcing as well as outsourcing, the language in § 5005(a)(3), "subject to the provisions of this section," becomes superfluous because subsection (c) will apply to all decisions in any event.  "In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted).  Here, the legislature has said that provisions of § 5005 after (a)(3) apply when there is outsourcing under that subsection.

Plaintiffs complain that there is no legislative history in support of the Government's interpretation of the statute, but that is not accurate.  The predecessor version of the statute contained the same operative language in its subsections (a)(4) and (c) as does the present version in subsections (a)(3) and (c).  *Compare* 39 U.S.C. § 5005 (1948) *with* 39 U.S.C. § 5005(a) (2006).  In the Congressional House Report on the original version of the statute, Congress stated its intent:  "It is the view of the committee a solution should be found in this session of Congress to the insecurity of the star-route contractors and the unfair cutthroat bidding practices that have grown up through the years eliminated.  Under these bidding practices we

---

language analysis.  Opp. at 20.  It is further of note that the stipulation was an interlocutory order which would have no preclusive effect.  *Starbuck v. City & Cty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) (interlocutory order has no preclusive effect).

find many honest, sincere, and conscientious star-route carriers who have given years' service, losing their routes because they have been underbid by a few dollars." H.R. Rep. 80-2003, 1948 U.S.C.C.A.N. 1864, 1866 (1948); *see also Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1254 n.2 (1975) (considering this legislative intent in interpreting the 1948 version of the statute). The Postal Service maintains that the statute is clear such that legislative history need not be consulted, but, to the extent there is any ambiguity, Congress made clear that its concern in enacting the statute was to deal with the problems in using private mail carriers, not to address the use of Government services.

## VI.    To The Extent Plaintiff Has Any Claim, It Would Be Under The CDA

As we explain above, what plaintiffs truly appear to be attempting here is an improper attack on the arbitrator's decision. If, however, they have any claim, it would have to come under the CDA.

That is the holding in *Government Technology Services, LLC v. United States*, 90 Fed. Cl. 522, 524 (2009) (*GTS*). Plaintiffs incorrectly argue that *GTS* is limited to cases where there are issues with the quality of the contractor's work. Opp. at 8. To the contrary, the gravamen of the complaint in *GTS* was the Government acted in bad faith so as to prevent the contractor from obtaining a contract extension. 90 Fed. Cl. at 524 ("GTS contends that, as a result of the bad faith misrepresentations by the COR, it was excluded from competition for task orders, with the result that its contract terminated instead of being extended under the Contract's option provision. It is on this claim of bad faith in the management of task orders that plaintiff bases its [] claim.") That is analogous to the alleged bad faith failure to conduct a § 5005 analysis here: In both cases, the claim is that the contract was brought to improper termination so as to use a different source for the service.

It is within that context that the Court should read *GTS* as standing for the broad proposition, as announced by the Court of Appeals for the Federal Circuit, that "the CDA is the 'exclusive mechanism' for the resolution of disputes arising, as here, in contract management." *Id.* at 527 (citing *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)). Like in *GTS*, plaintiffs contend that the Government has improperly brought their service under their existing contracts to a conclusion. Asserting that the service will thereafter come from a different source does not turn this contract dispute into a bid protest. *See also Star Route*, 223 F. Supp. 3d at 35 (determining this matter sounds in contract).

Similarly, plaintiffs miss the mark with their contention that *Salsbury Industries v. United States*, 905 F.2d 1518, 1520 (Fed. Cir. 1990), and *Appeals of Temple Contract Station LC*, No. 6430 (P.S.B.C.A.), 2014 WL 3535068 (July 16, 2014), are not applicable because they are not bid protests. Opp. at 10. Both cases demonstrate that a claim for wrongful contract termination (including when such termination comes pursuant to court order or to avoid conflict with other Government entities), made so the Postal Service could obtain the service from a different source, is brought under the CDA. Def. Mot. at 13. Plaintiffs are also incorrect in asserting that they can distinguish these cases because, in this matter, they fear they will lose the opportunity to obtain future contract work if insourcing occurs. Opp. at 10. Loss of future profits is in the nature of a contract remedy and may be sought under the CDA. *See, e.g.*, *Minesen Co. v. McHugh*, 671 F.3d 1332, 1335 (Fed. Cir. 2012) (claim for future lost profits brought under CDA).

Finally, plaintiffs inaptly attempt to distinguish these cases because the operative instruments in *Salsbury* (court order) and *Temple* (union agreement) specified the contracts to be terminated. Opp. at 11. These cases show that the claim (if any) when an outside instrument has

12

led to termination of a contract accrues under the CDA, not in bid protest. Def. Mot. at 10.

There is nothing about the form of the outside instrument that would change this analysis and the

distinction is irrelevant. In addition, plaintiffs ignore that the arbitrator's award specifically

identifies the 110 routes to be changed and requires that the union agree on any substitution.

ECF 1-1 at 22. Thus, even if the analysis showed that the routes at issue in this case should not

be transferred, the Postal Service would not be able to unilaterally make a change. Moreover,

because the union's agreement was necessary for any change to the 110 routes initially, a § 5005

analysis that showed that every one of the routes should not transfer would still be irrelevant,

because the union could simply refuse.[5]

## VII.   The CDA Claim Cannot Proceed Without A Contracting Officer's Final Decision

Plaintiffs' statement that the "CDA expressly provides that the Court has authority to

direct the contracting officers to issue decision in a specified period of time," Opp. at 16 (citing

41 U.S.C. § 7103(f)(4)), ignores that the statute allows this relief in the case of "undue delay on

the part of the contracting officer," which is not present here, where all but one of the plaintiffs

have not even waited 60 days for a decision and one will have waited exactly 63 days, by

tomorrow's hearing. Def. Mot. at 9; Opp. at 11 n.5. By comparison, in *BLR Group of America,*

*Inc. v. United States*, 84 Fed. Cl. 634, 648 (2008), the Court found 22 months of delay to be

unreasonable. 84 Fed. Cl. at 648. Moreover, a plaintiff cannot use the passage of time turn a

CDA claim that was prematurely filed into one that was timely. *Kellogg Brown & Root Servs. v.*

---

[5] Plaintiffs also cite the district court decision as noting that the Postal Service could
negotiate over which 110 routes would be terminated. Opp. at 12. That is undisputed, but
irrelevant. The arbitration award made the decision that 110 routes would be procured through
PVS. It did not give the Government any discretion on that point such that there could be a
decision to begin the procurement process.

*United States*, 115 Fed. Cl. 46, 56 (2014).  Finally, plaintiffs ignore that they have not sought this relief in their complaint.

In addition, plaintiffs misstate the Government's position as being that they cannot proceed "because the contracting officer has not yet issued a formal final decision," Opp. at 12, where, in fact, our position is that there has not yet been a (1) contracting officer's (2) final decision of any sort.  Def. Mot. at 15-16.  The true nature of the problem plaintiffs face is that they must have a final decision from the contracting officer, even if that decision lacks "boilerplate" language identifying itself as a final decision, before they can proceed.  Def. Mot. at 15-16.  They do not have such a decision because the Postal Service's general counsel is not a contracting officer and his letter is a statement of the Postal Service's intent, not a commentary on plaintiffs' claims.  *See BLR Grp.*, 84 Fed. Cl. at 648 (requiring that the final decision come from the contracting officer).

Plaintiffs only addition to the three cases that we have already shown are inapposite for addressing when a contracting's decision can be treated as final if it lacks the boilerplate language, *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990); *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267-68 (Fed. Cir. 1999); and *Volmar Constr., Inc. v. United States*, 32 Fed. Cl. 746, 754-55 (1995); is reliance on *CW Government Travel, Inc. v. United States*, 63 Fed. Cl. 369, 384 (2004).  *CW Government* adds nothing to their argument.  Like the other three cases, *CW Government* addresses the circumstances under which a contracting officer's action that is not a formal final decision can be treated as such.  63 Fed. Cl. at 384 ("A contracting officer's written refusal to render a 'final decision' does not provide an end-run around this court's jurisdiction; the substance, rather than the form of the letter is determinative.").  Plaintiffs cite no case in which a statement from a person who is not the

14

contracting officer, and not a decision on a claim at all, can be treated as a contracting officer's final decision.

**VIII.**   **Plaintiffs' Interpretation Of A 1975 Form Is Not Relevant**

Plaintiffs devote a significant portion of their opposition to asserting that the Postal Service uses a 1975 "form 5505" to evaluate transfers of service from HCR to PVS, as evidence that § 5005 requires such an examination.  Opp. at 18-19.  They do not cite any statutory or regulatory authority for this proposition.  Instead, they rely on a statement from their industry organization's executive director that this form was used in 1975 and the "Postal Service continues to use" the form, the latter statement being made without citation to any authority. Opp. at 18 (citing Mem. In Supp. Of Mot. for TRO and Prelim. Injunc., ECF No. 3, at 45-46). The Postal Service does not agree that this form is used in this manner, but even if it did, that the Postal Service may willingly chose to compare costs when converting HCR routes into PVS is not a statutory or regulatory requirement that it do so.  It is also not any sort of requirement that the Postal Service only use the least expensive mode of transportation.

Moreover, in the district court, plaintiffs' industry association made a similar argument about the import of this form, but added to it a crucial detail that they now omit.  Before the district court, the same declarant added that "**Attachment F** is a December 24, 2009 Postal Service memorandum that contains a more current version of Form 5505."  Appx2.[6]  The cover letter that is part of the referenced attachment makes clear that the form is being used for HCR "renewal" and that "cost efficiency" is to be considered in renewing HCRs.  Appx5.  The "current version of Form 5505" further makes clear that it is solely concerned with whether

---

[6] "Appx" refers to the pages of the appendix to this reply, which appendix exclusively contains documents that are public records filed with the district court.

service should go to HCR – every question is framed to consider whether using HCR meets the criteria, not to consider whether a transfer to PVS is appropriate.  Appx6.  In short, plaintiffs' own submissions show that the 1975 version of the form is no longer in use and that form 5505 does not mean what they say.

## IX.     Exercise Of A Contractual Termination Right Does Not Violate The Covenant Of Good Faith And Fair Dealing

Plaintiffs fail to state a claim under the covenant of good faith and fair dealing because (1) there is no violation of § 5005 here and (2) the Postal Service has the contractual right to terminate these contracts, such that the covenant does not apply.  Def. Mot. at 16-17.

First, plaintiffs are incorrect in their argument that a covenant of good faith and fair dealing claim is not subject to a motion to dismiss.  Opp. at 23.  A claim under the covenant that does not meet its fundamental requirements is subject to dismissal.  *See, e.g.*, *Caraballo v. United States*, No. 2016-1628, 2017 WL 2333111, at *8 (Fed. Cir. May 30, 2017).  Here, plaintiffs do not allege an act that is contrary to law or the Government's express contractual right to terminate, and there is no basis for such a claim.

Second, plaintiffs are incorrect that the fact that the arbitrator's decision does not specify which HCR routes to terminate allows them to state a claim under the covenant.  Opp. at 23.  As we established in our motion, a claim under the covenant only lies where a party takes an action that violates contractual expectations.  Def. Mot. at 24.  Where the Government bargained for the right to terminate the contract, unilaterally, there cannot be a claim that the exercise of that right is a violation of the covenant.

Third, that a plaintiff could have evidence of a bad faith termination of a contract is irrelevant where plaintiffs claim here is that the "bad faith" is in not following § 5005.  Def. Mot. at 24.  In that plaintiffs do not assert any breach of the implied covenant unless there is a

violation of law and, as we have shown, there is no violation of § 5005, there is no basis for a claim for violation of good faith and fair dealing.

## CONCLUSION

For all of these reasons, and those stated in its motion, the United States respectfully requests that the Court dismiss plaintiffs' complaint.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:                s/ Franklin E. White by Patricia M. McCarthy
REDDING C. CATES       FRANKLIN E. WHITE, JR.
Attorney                    Assistant Director
United States Postal Service
475 L'Enfant Plaza SW      s/ Adam E. Lyons
Washington, DC 20260-1101  ADAM E. LYONS
                           Trial Attorney
                           Commercial Litigation Branch
                           Civil Division
                           U.S. Department of Justice
                           P.O. Box 480, Ben Franklin Station
                           Washington, DC  20044
                           Tel:  (202) 353-2345
                           Fax:  (202) 514-7969
                           Email:  Adam.E.Lyons@usdoj.gov

July 26, 2017                 Attorneys for Defendant