**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| MAIL TRANSPORTATION, INC.; CAUSLEY TRUCKING, INC.; FOREMAN BROTHERS, INC.; F.S.R. TRUCKING, INC., d/b/a POSTAL CARRIER CORP; HOKULANI KIGYO, LLC, d/b/a PROFESSIONAL COMMERCIAL SERVICES; HOLTON TRUCK LINES, INC.; M. C. EIPPERLE, INC.; MIDWEST TRANSPORT, INC.; TAYLOR POSTAL CONTRACTING, INC.; W.B. ADAMS TRUCKING, INC.; YUNG LEE, INC.; QUALITY ONE TRANSPORT, LLC.; PAT SALMON & SONS, INC.; MAIL CONTRACTORS OF AMERICA, INC.; PAT SALMON & SONS OF FLORIDA, INC.; CORBIN'S TRUCKING, INC.; CBF TRUCKING, INC.; POSTAL TRANSPORT, INC.; MBM TRANSPORT, INC.; and STINGRAY DISTRIBUTING, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-934 C  Judge Victor J. Wolski |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

## SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff mail transportation contractors seek to enjoin the United States Postal Service (USPS or "Postal Service") from terminating their USPS Highway Contract Route (HCR) contracts and converting them to an in-house mode of transportation using postal employees referred to as Postal Vehicle Service (PVS). Converting these HCR routes to PVS violates 39 U.S.C. § 5005(c) of the Postal Reorganization Act. The Act requires the Postal Service to "use the mode of transportation which best serves the public interest, due consideration being given to

the cost of the transportation service under each mode."  The Postal Service plans on terminating

and converting Plaintiff's contracts without performing the analysis required by § 5005(c).

The Postal Service's actions to convert these existing HCR contracts to PVS are

imminent and permanent.  The Postal Service plans to complete the conversion PVS by

September 1, 2017.  The Postal Service has already begun to secure equipment and recruit new

employees to serve these routes, in many cases directly recruiting Plaintiffs' own employees.

Contract termination notices are expected to be issued shortly to carry out the conversion.

The Postal Service has stated that converting these HCR contracts to in-house PVS is

required to satisfy an arbitration award arising from a grievance by the American Postal Workers

Union (APWU), a union representing postal employees.  That is an incorrect reading of the

award.  Nothing in the award excuses the Postal Service from complying with 39 U.S.C.

§ 5005(c) in determining which HCR contracts to convert to PVS.  An arbitrator would not have

the power to order USPS to violate this statute.

Each Plaintiff will be irreparably and substantially harmed by the termination of their

HCR contracts and conversion to in-house PVS.  None of these contracts would have been

selected for conversion if USPS had complied with the statute.  The Plaintiffs thus seek to enjoin

the Postal Service from terminating their existing contracts and converting them to the PVS

mode of transportation in violation of 39 U.S.C. § 5005(c).

## INTRODUCTION

1.      The Postal Service relies upon both private contractors and postal employees to

deliver mail around the country.  In deciding whether to use private contractors (HCR) or in-

house employees (PVS) to service a particular route, the Postal Service is required by law to

select the mode of transportation that "best serves the public interest, due consideration being

given to the cost of the transportation service under each mode."  39 U.S.C. § 5005(c).

      2.     The Postal Service plans to change the mode of transportation for 110 existing

mail transportation routes by terminating existing HCR contracts and transferring the routes to

in-house PVS employees by September 1, 2017.  This action is improper because it is being

implemented without regard to the requirements of § 5005(c).  In making the decision to convert

these routes from private contractors to in-house employees, the Postal Service failed to conduct

the analysis required by § 5005(c).  The Postal Service did not determine which mode of

transportation best serves the public interest and did not give due consideration to cost.

      3.     The Postal Service's termination of existing HCR contracts and conversion of

these routes to PVS drivers without conducting the analysis required by § 5005(c) improperly

denies Plaintiffs an opportunity to continue performing their current contracts and to fairly

compete for work and follow-on contracts for which they are interested parties.

      4.     The Postal Service's failure to perform the analysis required by § 5005(c) is also a

breach of the duty of good faith and fair dealing implied in its contracts with Plaintiffs, which

obliges it to comply with the law in exercising its contractual rights.

      5.     Most of the routes that USPS intends to convert have been contracted out to

Plaintiffs—who are all HCR contractors—for decades.  Absent an injunction staying or reversing

termination of their contracts, Plaintiffs will lose revenue and profit, be forced to let long-time

employees leave, and be left with idled and under-utilized equipment and facilities.  The Postal

Service has advised the National Star Route Mail Contractors Association ("the Star Route

Association")—a non-profit association that represents the interests of several thousand HCR

contractors—that Plaintiffs will have no remedy at law to compensate them for these losses, effectively admitting that the terminations will result in irreparable harm.

6.      Terminating Plaintiffs' HCR contracts and converting them to PVS will cost the Postal Service millions of dollars more than allowing them to remain in place and will lead to less reliable service.  Converting to PVS does not better serve the public interest.

7.      In November 2016, the Star Route Association brought an action against the Postal Service in the U.S. District Court for the District of Columbia that related to the planned route conversions.  The District Court dismissed that action on jurisdictional grounds.  *See National Star Route Association, Inc. v. United States Postal Service*, No. 16-2350 (CKK), 223 F. Supp. 3d 14 (D.D.C. Dec. 19, 2016).  Notably, the District Court repeatedly stated its conclusion that the Postal Service would need to perform the § 5005(c) analysis before terminating any HCR contracts and converting them to PVS.

8.      Despite the District Court's admonishment, the Postal Service took no further actions towards completing any § 5005(c) analysis.

9.      Instead, by letter dated June 20, 2017, the USPS General Counsel stated that the Postal Service was terminating 110 HCR contracts, specified in an attached list, and converting them to in-house PVS by September 1, 2017.

10.     Plaintiffs, who have contracts on that list, seek to enjoin the Postal Service from terminating their HCR contracts and converting them to PVS.

**<u>PARTIES</u>**

11.     This action is brought by the below plaintiffs, each of whom is a USPS mail transportation contractor with at least one HCR contract on the list designated for termination and conversion to in-house PVS:

a.      Mail Transportation, Inc. ("MTI") is a family-owned and operated transportation and network solutions company incorporated in California with its principal place of business at 1509 Blossom Ct., Redlands, California 92373.  MTI's HCR Contract No. 92350 accounts for 90 percent of its business and is set to be converted to in-house PVS.  On or about June 29, 2017, MTI sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR Contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

b.      Causley Trucking, Inc. ("Causley") is a family-owned and operated, full service transportation supplier, incorporated in Michigan, with its principal place of business at 1621 Terminal Drive in Saginaw, Michigan 48601.  Causley currently holds 19 HCR contracts, two of which– HCR Contract 48090 and HCR Contract 48162 – are set to be terminated and converted to PVS.  On June 9, 2017, Causley received preliminary notice of the conversion of HCR Contract 48090 and HCR Contract 48162 to PVS.  On or about June 9, 2017, Causley sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR Contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.  On or about June 13, 2017, Causley sent a similar claim letter to the contracting officer concerning the planned termination of HCR Contract 48162.

c.      Foreman Brothers, Inc. ("Foreman") is a family-owned and operated transportation and network solutions company, incorporated in Michigan, with its principal place of business at 1799 14th Street, Detroit, Michigan.  On June 19, 2017, Foreman sent a claim letter to the contracting officer requesting a contract interpretation

on whether the planned conversion of its HCR Contract 48130 to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

       d.      F.S.R. Trucking, Inc., d/b/a Postal Carrier Corp. ("FSR") is a family-owned and operated transportation service provider, incorporated in Florida, with its principal place of business at 1710 Upland Road, Suite E, West Palm Beach, FL 33409. FSR has four contracts – HCR Nos.  33042, 33430, 33443, and 331N3 – set to be converted to PVS.  In early June 2017, FSR received preliminary notice that these contracts would be converted to PVS.  On or about July 3, 2017, FSR sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of these HCR contracts to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

       e.      Hokulani Kigyo, LLC, d/b/a Professional Commercial Services ("Professional") is a family-owned and operated transportation service provider. Professional is a Hawaii limited liability company with its principal place of business at 623 Kakoi Street, Bay 4, Honolulu, Hawaii 96819.  Professional's HCR 967L1 is on the list of contracts to be terminated and converted to PVS.  On or about June 30, 2017, Professional sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR Contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

       f.      Holton Truck Lines, Inc. ("Holton") owns TNH Enterprises and High Miler, Inc., and all three companies are family-owned and operated transportation service companies incorporated in Nevada, with their principal place of business at 86 US Highway 93 in Alamo, Nevada 89001.  On June 9, 2017 and June 12, 2017, Holton

received preliminary notice that TNH contracts HCR nos. 890L0, 89042, and 89044, and High Miler's HCR 89036 are to be terminated and converted to PVS.  On or about July 6, 2017, Holton sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contracts to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

g.      M. C. Eipperle, Inc. ("Eipperle") is a family-owned and operated transportation service provider incorporated in Michigan, with its principal place of business is located at 4800 West Dunbar Road, Monroe, Michigan, 48161.  Eipperle's HCR Contract 43491 is set to be converted to PVS.   On June 26, 2017, Eipperle sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

h.      Midwest Transport, Inc. ("Midwest") is a transportation service provider, incorporated in Delaware, with its principal place of business at 11385 N. Trimble Road, Robinson, IL 62454.  Midwest's HCR Contract No. 48010 is set to be converted to PVS. On or about July 6, 2017, Midwest sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR Contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

i.      Taylor Postal Contracting, Inc. ("Taylor") is a family-owned and operated transportation service provider, incorporated in Michigan, with its principal place of business at 4440 Peninsula Drive, Jackson, Michigan 49201-7803.  Taylor's HCR Contract 48018 is set to be converted to PVS.  Taylor first learned of the possibility that its HCR contract would be terminated and converted to PVS on approximately May 18,

2017.  On or about on May 24, 2017, Taylor sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

j.      W.B. Adams Trucking, Inc. ("WBA") is a family-owned and operated transportation service provider incorporated in New Jersey with its principal place of business at 1005 Old Whitehorse Pike, Waterford, NJ 08089.  On or about June 30, 2017, WBA received notice that its HCR Contract No. 194L4 is set to be terminated and converted to PVS.  On or about July 12, 2017, WBA sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

k.      Yung Lee, Inc. ("Yung Lee") is a family-owned and operated transportation company incorporated under the laws of California with its principal place of business located at 16380 Everetts Way in Riverside, CA 92504.  On or about June 12, 2017, Yung received notice that its HCR contracts 92352 and 90093 are set to be terminated and converted to PVS.  On July 11, 2017, Yung Lee sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

l.      Quality One Transport, LLC ("Quality One") is a single-owner limited liability company and transportation service provider, organized in Ohio, with its principal place of business at 3155 Albrecht Avenue, Akron, OH 44312.  Quality One's HCR Contract No. 442M0 is set to be converted to PVS.  By letter dated June 23, 2017, Quality One sent a claim letter to the contracting officer requesting a contract

interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

      m.     Pat Salmon & Sons, Inc. ("Salmon & Sons") is a corporation and transportation service provider, organized in Arkansas, with its principal place of business located at 3809 Roundtop Drive, North Little Rock, AR 72223.  Salmon & Sons' HCR Contract Nos. 760M2 and 76090 are set to be converted to PVS.  By letter dated July 13, 2017, Salmon & Sons sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contracts to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

      n.     Mail Contactors of America, Inc. ("MCA") is a corporation and transportation service provider, organized in Arkansas, with its principal place of business located at 3809 Roundtop Drive, North Little Rock, AR 72223.  MCA's HCR Contract No. 66393 is set to be converted to PVS.  By letter dated July 13, 2017, MCA sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

      o.     Pat Salmon & Sons of Florida, Inc. ("Salmon & Sons of Florida") is a corporation and transportation service provider, organized in Florida, with its principal place of business located at 1509 Pickettville Road, Jacksonville, FL 32220.  Salmon & Sons of Florida's HCR Contract No. 331AJ is set to be converted to PVS.  By letter dated July 13, 2017, Salmon & Sons of Florida sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

p.      Corbin's Trucking, Inc. ("Corbin's") is a transportation service provider organized under the laws of Michigan with its principal place of business in Detroit, Michigan.  Corbin's currently holds HCR Contract No. 48067, which is set to be converted to PVS.  By letter dated June 6, 2017, Corbin's sent a letter to USPS that described the hardships that would arise if the contract was terminated and implicitly sought an interpretation of the contract.

q.      CBF Trucking, Inc. ("CBF") is a corporation and transportation service provider, organized in New Jersey, with its principal place of business at 1001 Hopewell Avenue, Ocean City, New Jersey 07712.  CBF's HCR Contract No. 08550 is set to be converted to PVS.  By letter dated July 25, 2017, CBF sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contract to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

r.      Postal Transport, Inc. ("PTI") is a corporation and transportation service provider, organized in New Jersey, with its principal place of business at 1230 McCarter Highway, Newark, New Jersey 07104.  PTI's HCR Contract Nos. 112U0, 070V1, 070U7, and 070U9 are set to be converted to PVS.  By letter dated July 25, 2017, PTI sent a claim letter to the contracting officer requesting a contract interpretation on whether the planned conversion of its HCR contracts to PVS in disregard of 39 U.S.C. § 5005(c) would be a breach of contract.

s.      MBM Transport, Inc. ("MBM") is a transportation service provider incorporated in California, with its principal place of business located at 4859 W. Slauson

Avenue, # 295, Los Angeles, California, 90056.  MBM's Contract No. HCR 956L1 is set to be converted to PVS.

t.      Stingray Distributing, Inc. ("Stingray") is a transportation service provider incorporated in Utah, with its principal place of business located at 9131 N. Canyon Wash Road, Eagle Mountain, Utah, 84405.  Two of Stingray's HCR Contracts, HCR Contract No. 926L1 and HCR 92012, are set to be converted to PVS.

12.     Defendant is the United States of America, acting by and through the United States Postal Service.  The Postal Service is an independent establishment of the Executive Branch of the Government of the United States.  39 U.S.C. § 201.  The Postal Reorganization Act of 1970 allows the Postal Service "to sue and be sued in its official name."  39 U.S.C. § 401(1).  The Supreme Court has interpreted this statute as a broad waiver of sovereign immunity.  *United States Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 741-44 (2004).

## JURISDICTION

13.     The Court has jurisdiction over this bid protest action under 28 U.S.C. § 1491(b). The claims set forth in the Complaint challenge the Postal Service's "alleged violation of statute or regulation in connection with a procurement . . . ."  The Postal Service's plan to terminate and convert these HCR contracts to in-house PVS operations is considered a procurement under this statute.  Each of the Plaintiffs has standing as an "interested party" because the procurement violates § 5005(c) and deprives them of the opportunity to continue performing their current HCR contracts and to compete for an opportunity to perform follow-on work.  This Court has regularly assumed jurisdiction over government decisions that bring contracted work in house for performance by government employees.  *See, e.g., Labat-Anderson, Inc. v. U.S.*, 65 Fed. Cl. 570

(2005); *Dellew Corp. v. U.S.*, 108 Fed. Cl. 357 (2012).  The Court's jurisdiction to hear protests of Postal Service procurement actions is also well-established.  *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080-85 (Fed. Cir. 2001).

14.     The Court also has separate and independent jurisdiction over the Plaintiff's Contract Disputes Act claims under 28 U.S.C. § 1491(a).  Plaintiffs have sent claims for contract interpretation to the individual contracting officers administering their contracts.  Each claim seeks a contracting officer's final decision on whether converting their contracts to PVS without complying with 39 U.S.C. § 5005(c) would constitute a breach of the implied contractual duty of good faith and fair dealing.

15.     To date, no Plaintiff has received a contracting officer's decision on its claim for contract interpretation and 60 days has not yet passed since the submission of these claim letters.  However, the Postal Service General Counsel's June 20, 2017 letter confirms that the Postal Service will be terminating and converting these contracts pursuant to the arbitration award.  The General Counsel's statement serves as a *de facto* contracting officer's decision or deemed denial, and obviates the need for obtaining contracting officer final decisions as futile and unnecessary.  Alternatively, if a contracting officer's decision is still considered necessary, we ask the Court, pursuant to its authority under 28 U.S.C. § 7103(f)(4), to order the Postal Service to issue such final decisions immediately.

## FACTUAL ALLEGATIONS

**A.     Mail transportation statutes and procurement.**

16.     The Postal Reorganization Act of 1970 grants to the Postal Service the power to "provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail . . . ." 39 U.S.C. § 404(a)(1).

17.     The Act permits the Postal Service to obtain mail transportation by contract with third-party contractors or by individual Postal Service employees. 39 U.S.C. § 5005(a)(3). The determination as to whether to use third-party contractors or in-house Postal Service employees is governed by factors set forth in 39 U.S.C. § 5005(c):

> The Postal Service, in determining whether to obtain transportation of mail by contract under subsection (a)(3) of this section or by Government motor vehicle, *shall use the mode of transportation which best serves the public interest, due consideration being given to the cost* of the transportation service under each mode.

39 U.S.C. § 5005(c) (italics added). The requirements set forth in § 5005(c) are mandatory. The Postal Service "shall use the mode of transportation which best serves the public interest." Further, the Postal Service must give "due consideration" to "the cost of transportation service under each mode."

18.     The Postal Service obtains surface transportation of mail from individuals and private companies that hold contracts known as Highway Contract Routes ("HCR"). HCR contracts are awarded on a competitive basis. HCR contracts are typically issued in four-year terms and are often renewed and extended. Many Plaintiff contractors have provided mail transportation service for decades under the same contract that has been renewed multiple times and is now slated for termination and conversion to PVS.

19.     The Postal Service also obtains surface transportation of mail from employees of the Postal Vehicle Service ("PVS"), whose interests are represented by the American Postal Workers Union ("APWU").

**B.     Collective Bargaining Agreement between USPS and APWU.**

20.     Article 32.2.A of the Collective Bargaining Agreement (CBA) between the Postal Service and the APWU recognizes and incorporates the statutory requirement that the Postal Service consider cost and the public interest in choosing between HCR contractors and PVS employees.  Article 32.2.A provides:

> The American Postal Workers Union, AFL-CIO, and the United States Postal Service recognize the importance of service to the public and cost to the Postal Service in selecting the proper mode for the highway movement of mail.  In selecting the means to provide such transportation the Postal Service will give due consideration to public interest, cost, efficiency, availability of equipment, and qualification of employees.

21.     The CBA requires the Postal Service to notify the APWU before it awards an HCR contract for a route involving 350 or fewer highway miles or an operating time of eight hours or less.  The contents of the required notice are specified in Article 32.2.C of the CBA.  If the proposed route is a renewal of an existing HCR contract or replaces an existing PVS service, the Postal Service is required to provide the APWU with information about the cost of the existing HCR service.

22.     Article 32.2.B of the CBA allows the APWU time to consider the Postal Service notification and to request a meeting regarding the proposed HCR contract.  Upon receiving a meeting request, the Postal Service and the APWU are to exchange cost analyses and meet to discuss the planned HCR contract.  The CBA requires a meeting between the Postal Service and the APWU, but it does not dictate a specific outcome.

**C.    APWU grievance and resulting arbitration decision.**

23.    On April 19, 2011, the APWU filed a grievance asserting that the Postal Service failed to provide notices required under Article 32.2.  (See Doc. #1-1 ("Arbitration Award," at 1 (Aug. 18, 2016)).)

24.    At the time of the Arbitration Award, there were 110 HCR contracts still active for which the Postal Service failed to provide the APWU with the required notice.  As part of its demand, the APWU sought an order that required the Postal Service to convert those HCR routes to PVS routes for the regular HCR contract period of four years.  (Doc. #1-1 at 1.)

25.    In response to the grievance, the Postal Service argued that the remedy demanded by the APWU was unreasonable.  The Postal Service admitted that its notifications to the APWU were "tardy," but it asserted that the delay was not prejudicial to the APWU because, even if timely notice had been given, the HCR contracts would still have been awarded to contractors because it was less expensive to use HCR contractors than to use PVS employees.

26.    The APWU's grievance was resolved in an arbitration award issued on August 18, 2016.  (Doc. #1-1.)  The arbitrator adopted the Postal Service's argument that strict compliance with the notice requirement would not likely have resulted in converting highway routes serviced by HCR contracts to PVS employees:

> [T]here is little likelihood, as a general matter, that even if the Postal Service had provided timely notice and otherwise followed the procedure mandated by Article 32.2.B the Postal Service would have retrieved the HCR work at issue for performance by the bargaining unit rather than renewing the contracts.[]  The Union's own evidence supports this conclusion.

(Doc. #1-1 at 18 (footnote omitted).)

27.    The arbitrator also agreed with USPS that it would have been significantly cheaper to continue using HCR contractors than PVS employees.  The Arbitration Award notes

that the APWU's own economist testified that in the first quarter of 2015, the estimated cost of using PVS employees would have exceeded HCR costs by $3.5 million.  (Doc. #1-1 at 8.)  In the third quarter of 2015, APWU's economist estimated additional cost of using PVS employees was $1.6 million.  (Doc. #1-1 at 8.)

28.     The arbitrator granted APWU's request that USPS be ordered to terminate 110 HCR contracts and convert them to in-house PVS, but did not dictate the termination of the specific HCR routes for which notice was not provided.  Instead, the Arbitration Award allowed the parties to substitute other routes.  (Doc. #1-1 at 19.)  The arbitrator also retained jurisdiction "to resolve any matters relating to the implementation of this remedy."  (Doc. #1-1 at 19.)

29.     The arbitration was conducted solely between USPS and the APWU.  No HCR contractors were advised of the proceeding or given an opportunity to participate or submit information.

30.     In a footnote appended to the remedy, the arbitrator stated:  "I recognize that the Postal Service may be required to indemnify contractors, but that is a risk it took by awarding contracts in contradiction to Article 32.2.B."  (Doc. #1-1 at 19 n.11.)  In fact, the Postal Service General Counsel has stated the opposite: that HCR contractors have no remedy for the cost consequences stemming from the contract terminations.

**D.     District Court challenge to HCR to PVS conversion.**

31.     The Postal Service notified the Star Route Association of the arbitration award in September 2016.

32.     The Star Route Association responded to the Postal Service in a letter dated October 7, 2016.  (Doc. #1-2 (Hendel letter to Marshall (Oct. 7, 2016)).)  Since USPS believed

the Arbitration Award required it to terminate and convert HCR contracts to PVS without regard to 39 U.S.C. § 5005(c), the Star Route Association asked USPS to seek to vacate the Award.

33.     By letter dated November 10, 2016, the Postal Service responded that it would not seek to vacate the award and that the HCR contractors had no "viable breach of contract claims." to challenge the impending conversion of their contracts to PVS.  (Doc. #1-3 (Marshall letter to Hendel (Nov. 10, 2016)).)

34.     On November 30, 2016, the Star Route Association brought an action in the U.S. District Court for the District of Columbia seeking to enjoin the Postal Service from following the arbitration award.  The action was docketed as Civil Action No. 1:16-2350-CKK.

35.     On December 19, 2016, the District Court dismissed the Star Route Association's action for lack of jurisdiction (finding that this Court had exclusive jurisdiction) and as premature since the Postal Service had not yet determined which routes it intended to convert. *See National Star Route Mail Contractors Association, Inc. v. United States Postal Service*, No. 16-2350 (CKK), 223 F. Supp. 3d 14 (D.D.C. Dec. 19, 2016) (opinion attached at Doc. #1-4) (hereinafter the "2016 Proceeding").

36.     In reviewing the Arbitration Award's requirements, the District Court found that the Arbitration Award presumed that the Postal Service would perform the required § 5005(c) analysis in selecting which routes to convert:

> The flexibility of this award is critical.  It affords the Postal Service an opportunity to examine its route assignments and design the proper combination of HCR and PVS routes that best serves the public interest.  Rather than undertake this complex analysis, the Arbitration Award rather presumes that the Postal Service will comply with the requirements of § 5005 of the Postal Reorganization Act and the related provisions of the National Agreement.

223 F. Supp. 3d at 24; *see also id.* at 33-34 ("The Arbitration Award presumes that the Postal Service will conduct [the § 5005(c)] analysis when deciding which contracts to terminate . . . .").

37.     Following the dismissal of the lawsuit, the Postal Service refrained from taking action to terminate and convert any HCR contracts to PVS pursuant to the Arbitration Award for approximately the next six months.

38.     By letter dated June 20, 2017, the USPS General Counsel stated that the Postal Service had reached agreement with the APWU concerning which 110 HCR contracts to convert to PVS.  The General Counsel stated that it agreed with the APWU that all 110 HCR routes should be converted by September 1, 2017, and that if USPS is unable to meet that deadline for certain routes it would notify the APWU.  The General Counsel's letter did not state or otherwise indicate that it performed the 5005(c) analysis in selecting the 110 HCR contracts slated for termination and conversion to PVS.  (Doc. #1-5 (Marshall letter to Hendel (June 20, 2017) (without attachment); Doc. #1-6 (Kappler letter to Hendel (June 23, 2017) (with attachment).)

39.     This action followed.

### COUNT I – VIOLATION OF 39 U.S.C. § 5005(c)

40.     Plaintiffs reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

41.     Under 39 U.S.C. § 5005(c), the Postal Service "shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode."  The Postal Service has failed to conduct this analysis or make a § 5005(c) determination—let alone make a reasonable § 5005(c) determination—in selecting Plaintiffs' HCR routes to terminate and convert to PVS.

42.     The requirements of 39 U.S.C. § 5005(c) are mandatory and cannot be waived, ignored, delegated, or overridden.  The Postal Service has no authority to ignore the public interest or the cost of transportation service in determining whether to obtain mail transportation by HCR or PVS mode.

43.     The Arbitration Award provided the Postal Service with the flexibility of determining which routes to convert from HCR to PVS.  If the Postal Service had performed the § 5005(c) analysis and determined which routes were in the public interest and cost effective to convert, the Postal Service could have complied with both the Arbitration Award and § 5005(c).

44.     Terminating Plaintiffs' HCR contracts and converting the routes to PVS without first performing the analysis required by the Postal Reorganization Act is a violation of 39 U.S.C. § 5005(c).

45.     Plaintiffs' economic interests will be adversely affected and irreparably harmed if the Postal Service proceeds with its plan to terminate their HCR contracts.

WHEREFORE, Plaintiffs respectfully request that the Court temporarily, preliminarily, and permanently enjoin the Postal Service from terminating and converting their designated contracts to PVS, and that any further plans to terminate and convert HCR contracts to PVS must first comply with 39 U.S.C. § 5005(c), and to grant such other and further relief that the Court deems appropriate.

Dated this 24th day of August 2017.

Respectfully submitted,


/s/ David P. Hendel
David P. Hendel (DC Bar No. 370705)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC  20006-4675
Tel: (202) 378-2356
Fax: (202) 378-2319
david.hendel@huschblackwell.com




/s/ Brian P. Waagner
Brian P. Waagner (DC Bar No. 450823)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC  20006-4675
Tel: (202) 378-2355
Fax: (202) 378-2319
brian.waagner@huschblackwell.com